DAVID CHIU, State Bar #189542
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief Deputy City Attorney
WADE CHOW, State Bar #168527
Chief Attorney
Neighborhood and Resident Safety Division
HUNTER W. SIMS III, State Bar #266039
Deputy City Attorneys
Fox Plaza
1390 Market Street, Seventh Floor
San Francisco, California 94102-5406
Telephone:     (415) 554-4259 (Sims)
Facsimile:     (415) 437-4644
E-Mail:        hunter.sims@sfcityatty.org

Attorneys for Plaintiffs and Cross-Defendants
CITY AND COUNTY OF SAN FRANCISCO
(Erroneously sued as MAYOR'S OFFICE OF
HOUSING AND COMMUNITY DEVELOPMENT
[1]) and PEOPLE OF THE STATE OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation; and the PEOPLE OF THE STATE OF CALIFORNIA, by and through Dennis J. Herrera, City Attorney for the City and County of San Francisco,<br><br>Plaintiffs,<br><br>vs.<br><br>KELLY ANN DOMINGUEZ JOHNSTON<br><br>Defendants.<br><br>KELLY ANN DOMINGUEZ JOHNSTON, an individual, | Case No. 3:25-cv-03518 SK<br><br>**PLAINTIFFS AND CROSS-DEFENDANTS' REPLY IN SUPPORT OF MOTION AND MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Hearing Date:     July 21, 2025<br>Hearing Judge:   Hon. Sallie Kim<br>Time:            9:30 a.m.<br>Place:           450 Golden Gate Avenue<br>                 Courtroom C, 15th Floor<br>                 San Francisco, California<br><br>Date Action Filed:   September 20, 2018<br>Trial Date:          Not set |

---

[1] The Mayor's Office of Housing and Community Development is a department of the City and County of San Francisco. This department is not a properly joined defendant because it does not have power to sue or be sued, and is not an independent public corporation. (See *Bauer v. County of Ventura* (1955) 45 Cal.2d 276, 288-289; *compare* Gov. Code, §§ 23000, 23004, subd. (a).)

Cross-Complainant,

v.

MAYOR'S OFFICE OF HOUSING AND COMMUNITY DEVELOPMENT, a City and County of San Francisco organization, and ROES ONE through ROES TEN,

Cross-Defendants.

**INTRODUCTION**

In 2015, Defendant agreed to certain restrictions on her rights to sell and rent a property in consideration for the City selling her the property at a significantly reduced price. Complaint ¶ 18-23, Exs. 1-5. This is the basic premise of the City's Inclusionary Affordable Housing Program (Below-Market Rate or "BMR Program"): lower-income San Franciscans become homeowners at reduced prices; in exchange for the opportunity to become first-time homeowners, these purchasers agree to live in the units, and that their units will remain restricted in price so that other lower-income San Franciscans will have the same opportunity to become homeowners. Defendant did not have to purchase a BMR unit. But, she did. Now, after enjoying the benefits of home ownership for ten years, and having been caught violating the restrictions she agreed to, she has decided the restrictions are unconstitutional. But, she can't convert her regrets about entering into what she now considers a bad deal into successful constitutional claims against the City.

First, all of Defendant's claims are time-barred. Defendant has known about the restrictions on her property since 2015 and failed to act until now.

Second, Defendant's constitutional claims are based on a contract that she entered voluntarily in 2015. The exercise of contractual rights by a governmental contracting-party does not give rise to a constitutional claim. Defendant has no constitutional claims.

Even ignoring the first two arguments, Defendant's constitutional claims fail on the merits. First, Defendant has no regulatory takings claim because Defendant's frustration that her property did not sell at the "Maximum Resale Price" does not make the property inalienable.

Second, Defendant's substantive due process claim fails because there is a rational relationship between the BMR Program and achieving more affordable housing in the City. This rational relationship is demonstrated in the language of the very ordinance creating the BMR program.

Third, Defendant's procedural due process claim fails because the BMR Program does not impact a constitutionally-protected property interest and she has alleged no lack of process.

Fourth, Defendant has no equal protection claim. She is not a member of a suspect class and seeks no protection of a fundamental right. Thus, she must plead that she was intentionally treated

differently from others similarly situated and there is no rational basis for the difference in treatment. Defendant fails to do this.

Finally, Defendant admits that she has no claim against the City based on misrepresentation. She also does not contest that the City is immune from claims based on the City's alleged wrongful prosecution of the illegal rental of her BMR unit.

The Court should dismiss the Cross-Complaint without leave to amend.

## ARGUMENT

### I. DEFENDANT'S CLAIMS ARE TIME BARRED.

A section 1983 claim accrues when the claimant knows or has reason to know of the injury which is the basis of the action, and there is a two-year statute of limitations on these claims. *Elliot v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994). Defendant has known about the terms of her participation in the BMR Program since she agreed to participate in the Program in 2015. Cross-Complaint ¶ 5; Complaint Exs. 1-5 (written agreements to the terms of the BMR Program signed by Defendant). Even if Defendant argued that she somehow lacked notice of the BMR Program terms, she admits she tried to sell her property in 2020 and 2021, the moment she claims she realized the BMR Program was unconstitutional. Cross-Complaint ¶¶ 6-11. But she never raised a challenge to her contractual obligations until she filed a cross-complaint in this action – four to five years later. Defendant's claims have been time-barred for years.

Defendant's argument that her claim is not time-barred is that she continues to be bound by the BMR Program terms that she agreed to when she bought her property back in 2015. Opposition at 5:16-23. But, as Defendant's own authorities confirm, "continuing effect is insufficient to constitute a continuing violation." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746 (9th Cir. 2019). In *Bird*, the court held that the two-year statute of limitations began to run when the plaintiff learned she had been placed on child protective service's registry years before. *Id*. There was no continuing violation just because she remained on the registry. *Id*. Defendant knew about the Program sale restrictions in 2015, and the continued existence of those restrictions is insufficient to constitute a continuing violation.

Likewise, Defendant's other cited cases do not support an argument that the statute of limitations was tolled by her continuing obligations to the City. In *Kuhnle Bros., Inc. v. Cnty. of*

*Geauga*, 103 F.3d 516, 520-21 (6th Cir. 1997), a trucking company brought an action challenging the constitutionality of a county ordinance banning truck travel on county roads. The court held that, when the alleged harm is an unconstitutional taking or violation of due process reducing the value of property, the two-year statute of limitations runs from when the challenged statute is enacted. *Id*. at 521. Likewise, here, Defendant's allegations stem from the alleged taking of her property when she agreed to the restrictions on her property in 2015.

In *Flynt v. Shimazu*, 940 F.3d 457, 463 (9th Cir. 2019), gambling establishments sued state officials for prohibiting operators of a California cardroom from owning more than a one-percent interest in any out-of-state casino. The court held that this challenge was made within the statute of limitations for section 1983 because the establishments alleged they were prohibited by the statute from making specific investments in the prior two years, thus giving rise to new injuries. *Id*. Likewise, *Virginia Hosp. Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989) involved ongoing reimbursement requests by a hospital for Medicaid patients, including new requests resulting in injuries that occurred within the last two years. Here, Defendant does not allege changes to the BMR Program or new Program terms imposed upon her within the last two years; instead, she challenges the terms of her purchase that she agreed to ten years ago. But, as stated in *Bird*, a "continuing effect is insufficient to constitute a continuing violation."

Defendant's claims are all time-barred and should be dismissed with prejudice.

## II. THE EXERCISE OF CONTRACTUAL RIGHTS BY THE CITY DOES NOT GIVE RISE TO A CONSTITUTIONAL CLAIM.

"[W]hen a municipality acts in a contractual or proprietary capacity, actions such as contract termination or detention of property under the contract that would constitute a simple breach of contract when a non-governmental entity is involved do not become a constitutional violation simply because the contracting party is a municipality." *Massó-Torrellas v. Mun. of Toa Alta*, 845 F.3d 461, 468 (1st Cir. 2017); *see also Preston Hollow Cap., LLC v. Cottonwood Dev. Corp.*, 23 F.4th 550, (5th Cir. 2022) (agreeing with *Massó-Torrellas*). "[T]he exercise of contractual rights by a governmental contracting-party does not give rise to a constitutional claim." *Id*.; see also Plaintiffs' Motion to Dismiss at 8:5-9:24.

In her Opposition, Defendant argues that her property rights do not sound in contract because she does not "mention breach of contract or property interests arising from a contract" in her Cross-Complaint. Opposition at 8:12-18. But, ignoring the contract, which is included as Exhibits 1-5 of the Complaint, does not make it go away. The plaintiffs in *Massó-Torrellas* also sued under section 1983, but could not transform the underlying issue from being a contract claim. Here, Defendant agreed to restrictions on the occupancy, rental and sale of her property in exchange for a significantly reduced purchase price. Complaints Exs. 1-5 (see specifically Ex. 3 at 26-27 for "Pricing Methodology for BMR Units upon Resale"). She has now decided she objects to the terms she agreed to back in 2015. This claim sounds in contract. See Plaintiffs' Motion to Dismiss at 7-9.

Defendant cannot transform her contract claims into constitutional claims; they should be dismissed with prejudice.

## III. DEFENDANT'S SECTION 1983 CLAIMS FAIL AS A MATTER OF LAW.

To prevail on her claims under 42 U.S.C. section 1983, Defendant must show that (1) acts by the City; (2) under color of state law; (3) deprived her of federal rights or privileges; and (4) caused her damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163–1164 (9th Cir. 2005). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Id.* Accordingly, Defendant must establish that San Francisco's alleged actions deprived her of some right or privilege protected by the Constitution or laws of the United States. Defendant cannot prove such a deprivation, and the section 1983 claims should therefore be dismissed. Defendant has not alleged the threshold requirement of a protected property interest necessary to support her claims for inverse condemnation, due process, and equal protection.

The "first inquiry" in every challenge raising these constitutional claims, "is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999); see also, *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1198 (9th Cir. 1998) ("In order to state a claim under the Takings Clause, a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected."). "A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state

law.'" *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)). But Defendant's desire to sell her property at an unrestricted market price is not such a protected interest.

Even if Defendant could satisfy the threshold requirement for a protected property interest, her constitutional claims fail for the following additional reasons.

### A.   Defendant's inverse condemnation/regulator takings claim fails as a matter of law.

In her Opposition, Defendant explained that her regulatory takings cause of action is based on the BMR Program's rules setting "the maximum listing price for the [sale of a] BMR unit" and deciding "who would be eligible to purchase it." Opposition at 6:24-7:11. "[W]here the government merely regulates the use of property, compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." *Hensler v. City of Glendale*, 8 Cal. 4th 1, 10 (1994), as modified on denial of reh'g (Sept. 22, 1994) (citing *Yee v. City of Escondido,* 503 U.S. 519 (1992)). But Defendant cannot make this showing.

Defendant argues that the restrictions of the BMR Program affect the alienability of her property, causing her to bear a burden she should not bear. Opposition at 6:24-7:11. But Defendant has not plead sufficient facts to support this argument. Instead, she simply states that from December 2020 to August 2021, her property did not sell at the price set by the BMR Program terms. Cross-Complaint ¶¶ 8-11. But, the BMR Program only sets a "Maximum Resale Price." Complaint Ex. 3 at 26-27. In fact, the BMR Program Manual specifically says: "A BMR Owner is not guaranteed that a buyer will purchase a BMR Unit at the Maximum Resale Price upon resale and may have to lower the resale price in order to attract a buyer. The price of a BMR Unit at resale is not guaranteed to exceed the initial purchase price of the BMR Unit." *Id*. at 27. Defendant does not claim that the City prevented her from selling her property, she simply complains that the City did not allow her to sell it for a higher price and free of the restrictions of the BMR Program. Many owners would like to sell their homes at a higher price; being unable to do so without lowering the price does not make their property inalienable, and does not state a claim for a taking.

5

Defendant's inverse condemnation/regulatory taking claim should be dismissed with prejudice.

**B.     Defendant's substantive due process claims fail as a matter of law.**

The City is mandated to develop affordable housing to meet community needs, and the City's BMR Program is rationally related to that need, thus defeating a substantive due process claim. When a plaintiff challenges economic legislation on substantive due process grounds, courts afford "great deference to the judgment of the legislature." *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 690 (9th Cir. 1993). "Ordinances survive a substantive due process challenge if they were designed to accomplish an objective within the government's police power, and if a rational relationship existed between the provisions and purpose of the ordinances." *Id.* (internal cites omitted).

Here, the City's Inclusionary Affordable Housing Program serves the important government purpose of meeting the housing needs of lower and middle-income San Franciscans. Section 415.1 of the San Francisco Planning Code states: "Affordable housing is a paramount statewide concern" and "[l]ocal and state governments have a responsibility to use the powers vested in them to facilitate the improvement and development of housing to make adequate provision for the housing needs of all economic segments of the community." Section 415 of the Planning Code states: "The Planning Department and MOHCD shall periodically publish a Procedures Manual containing procedures for monitoring and enforcement of the policies and procedures for implementation of this Program" and the manual "in effect at the time of initial purchase or initial rental of an Affordable Unit shall govern the regulation of that unit." The manual sets maximum resale pricing (Complaint Ex. 3 at p. 26) all in pursuit of "providing housing options to Low-income, Median-income and Moderate-income Households in San Francisco in order to maintain income and cultural diversity in San Francisco" (*id*. at p. 1). Even Defendant admits there is a rational basis for the BMR Program: "The BMR Program promises low-income renters a chance to get ahead by buying into the lucrative San Francisco housing market." Cross-Complaint at 2:6-7; see also Opposition at 10:6-7 ("The City and its personnel may have the best intentions in designing and administering the Program").

The City's BMR Program is a legitimate exercise of its police power, designed to meet the housing needs of lower and middle-income San Franciscans. Defendant offers no reason for the Court

to conclude that the Program lacks a rational relationship to maintaining the stock of affordable housing in San Francisco. Defendant's substantive due process claim fails as a matter of law.[2]

C.   **Defendant's procedural due process claims fail as a matter of law.**

"To obtain relief on a procedural due process claim, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)) (editing marks omitted). Generally, "due process of law requires notice and an opportunity for some kind of hearing prior to the deprivation of a significant property interest." *Halverson v. Skagit County*, 42 F.3d 1257, 1260 (9th Cir. 1995) (citation and editing marks omitted).

In her Opposition, for the first time, Defendant clarifies that she alleges that the BMR Program "effectively abolishes the alienability" of her BMR unit. Opposition at 6:28-7:6. But, as argued in Section III.A, being unsuccessful in selling one's property at the maximum price hardly makes it inalienable. The BMR Program restrictions don't prohibit Defendant from selling her property; they simply prohibit her from selling it at her preferred price.

Additionally, Defendant fails to allege that she was not provided sufficient notice of some action the City planned to take or that she was deprived of the right to be heard before or after such an action was taken. In fact, she was notified in writing of the restrictions on sale when she purchased her BMR unit in 2015 and agreed to those restrictions. Complaint Exs. 1-5. Defendant's procedural due process claim should be dismissed with prejudice.

D.   **Defendant's equal protection claim fails as a matter of law.**

Defendant is not a part of a protected class, and no City policy impacts her fundamental rights. Defendant has not alleged that she has been treated differently than other BMR property owners in

---

[2] In clarifying her constitutional theories of liability (other than equal protection), Defendant fails to include her claim in that the City drew "erroneous conclusions and threaten[ed] outrageously high fines and penalties" (Cross-Complaint ¶ 29) because she unlawfully rented out her property. Opposition at 6-8. But, while due process protects against governmental arbitrariness, such arbitrary actions must "shock the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998). Defendant admits her property was illegally rented (¶ 13). Prosecution for admitted illegal use of the unit is hardly an abuse of power that shocks the conscience.

regards to her ability to sell her property. Cross Complaint ¶¶ 32-35. She has also not alleged that the restrictions on sale do not have a rational basis. *Id*. Defendant fails to state an equal protection claim.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.' Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "Social and economic legislation…that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose." *Hodel v. Indiana*, 452 U.S. 314, 331 (1981). The legitimate governmental purpose of the BMR Program is evidence from the fact of San Francisco's ordinances. See Section III.B, above. When an aggrieved party is not a member of a protected class or seeking protection of a fundamental right, she can succeed on her equal protection claim only by demonstrating that she has been "intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

### 1. Defendant is not a member of a suspect class and the alleged facts do not impact a fundamental right.

It remains unclear what Defendant is alleging in her equal protection claim in the Cross-Complaint, but her Opposition raises some new claims. First, she seems to allege that she is a member of a suspect class of "economically disadvantaged" people (Opposition at 8:25), but economic class is not a suspect class. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 24 (1973).

Second, Defendant seems to argue that the BMR Program impacted her fundamental right to the alienability of her property. Cross-Complaint ¶ 33. But, as discussed in Section III.A above, the alleged facts do not support a claim that the BMR Program prevented her from selling her property. Not being able to sell one's property at market rate is not a fundamental right, and Defendant offers no contrary authority. Because zoning and land use issues do not implicate fundamental rights, *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1239 (9th Cir. 1994), the Cross-Complaint fails to state a claim subject to strict scrutiny. This is in contrast to Defendant's cited cases. See *Griffin v. Illinois*,

351 U.S. 12, 19 (1956) (indigent criminal defendants facing loss of the fundamental right of liberty must be provided with a free transcript on appeal); *Harper v. Virginia State Bd. of Elections,* 383 U.S. 663, 666 (1966) (poll tax held unconstitutional because it impinged on the fundamental right of voting); *In re Antazo*, 3 Cal. 3d 100, 115 (1970) (imprisonment because of inability to pay a fine impacts the fundamental right of liberty). In contrast to Defendant's claim in her Opposition (see p. 9:13-14), Defendant must allege intentional discrimination because she is not a member of a suspect class and her fundamental rights are not implicated.

### 2. Defendant admits there is a rational basis for the BMR Program and has not pled facts that the City intentionally discriminated against her.

Because Defendant cannot and does not allege that she is a member of a protected class or seeking protection of a fundamental right, she can only succeed on her equal protection claim by demonstrating that she has been "intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Court need only determine that the Program is rationally related to a legitimate government interest. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005). The Court need not determine whether the BMR Program is the wisest means for achieving the City's affordable housing goals. In fact, the Court is precluded from substituting its judgment for that of the City's legislative body. *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124 (1978).

Defendant admits that there is a rational basis for the BMR Program: "The BMR Program promises low-income renters a chance to get ahead by buying into the lucrative San Francisco housing market." Cross-Complaint at 2:6-7. The Program's sale restrictions exist to keep BMR units affordable for future low-income San Franciscans (see Section III.B, above), a restriction only imposed on buyers who have received a discounted price on their property. Applying the extremely deferential rational relationship standard of review to the facts alleged in the Cross-Complaint, this Court can conclude, without further motion or a trial on this claim, that the Program is not clearly irrational.

Defendant also fails to allege that she has been treated differently from other owners of BMR units in the City. Defendant does not allege that other BMR owners have been permitted to ignore the BMR Program's restrictions. Instead, her claim appears to be that she is treated differently than

owners of property not purchased through the BMR Program. But, BMR Program participants are not similarly situated to owners of property purchased on the open market because BMR owners bought their units at reduced prices that typical buyers of real estate do not enjoy. Defendant's only allegation that she has been treated differently than others is her complaint that she was singled out for punishment. Opposition at 9:28-10:1. The only facts pled in support of this claim are that the City investigated her illegal rental of her unit and threatened penalties. Cross-Complaint ¶¶ 15, 33. But this argument fails because (1) Defendant has not pled that other BMR owners who violated BMR Program rules were not investigated and penalized and (2) Defendant admits that her husband did rent out the BMR unit, contrary to the BMR Program rules. Cross-Complaint ¶ 13; Complaint Ex. 3 (section F of BMR Manual prohibiting rental); S.F. Planning Code § 176 ("property owner" is "Responsible Party" of the misuse of a property). Finally, while Defendant is correct that there can be a "class of one" and cites to *Village of Willowbrook*, she still must plead that others were treated differently. *Village of Willowbrook*, 528 U.S. at 565 (solo plaintiff successfully pled an equal protection claim based on her village demanding a 33-foot easement from her while only demanding a 15-foot easement from neighboring property owners). She has not done so.

Defendant's equal protection claim should be dismissed with prejudice.

### E. Defendant concedes the City has not misrepresented the BMR Program's restrictions, and does not deny that the City is immune from wrongful prosecution claims.

Defendant admits that her claims are not based on alleged misrepresentations by the City. Opposition at 10:12-17. To the extent her constitutional claims are based on her allegations that the City "ma[de] false promises to lure her into the program" (Cross-Complaint ¶¶ 21, 25, 29, 33), they should be dismissed.

Defendant does not deny that she is precluded from pursuing claims against the City based on alleged wrongful prosecution. Motion to Dismiss at 11:8-12:6. Her claim that the City wrongfully investigated her and sought penalties from her for illegally renting out her BMR unit should be dismissed.

## CONCLUSION

The City respectfully requests the Court grant the motion dismiss for the above-stated reasons.

Date: June 13, 2025

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
WADE CHOW
Chief Attorney
Neighborhood and Resident Safety Division
HUNTER SIMS
Deputy City Attorneys

By:  */s/ Hunter W. Sims III*
HUNTER W. SIMS III
Attorneys for Plaintiffs
CITY AND COUNTY OF SAN FRANCISCO and
PEOPLE OF THE STATE OF CALIFORNIA

# CERTIFICATE OF SERVICE

      I, CHRISTINE HOANG, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States District Court for the Northern District of California by using the appellate CM/ECF system on June 13, 2025.

**PLAINTIFFS AND CROSS-DEFENDANTS' REPLY IN SUPPORT OF MOTION AND MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

      Executed June 13, 2025, at San Francisco, California.

                                                         */s/  CHRISTINE HOANG*
                                                         CHRISTINE HOANG