UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation; and the PEOPLE OF THE STATE OF CALIFORNIA, by and through Dennis J. Herrera, City Attorney for the City and County of San Francisco,<br><br>Plaintiff and Cross-Defendant,<br><br>v.<br><br>KELLY ANN DOMINGUEZ JOHNSTON,<br><br>Defendant and Cross-Plaintiff. | Case No. 25-cv-03518-SK<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Regarding Docket No. 6 |

This matter comes before the Court upon consideration of the motion to dismiss filed by Plaintiff and Cross-Defendant City and County of San Francisco (the "City"). (Dkt. No. 6.) This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and all parties consented to the jurisdiction of a federal magistrate judge. (Dkt. Nos. 4, 5.) Having carefully considered the parties' papers, relevant legal authority, and the record in the case, and having had the benefit of oral argument, the Court hereby GRANTS the City's motion to dismiss for the reasons set forth below.

**BACKGROUND**

Defendant and Cross-Plaintiff Kelly Ann Dominguez Johnston ("Johnston") alleges the following facts, which the Court accepts as true for purposes of this motion. In October 2015, Johnston purchased a Below Market Rate condominium unit located at 400 Grove Street, Unit 100 (the "BMR Unit"), as part of the Below Market Rate housing program (the "Program") operated

by the City.[1]  (Dkt. No. 1-5 (Ex. 5) ¶ 5.)  As part of the Program, the City restricted the BMR Unit's maximum resale price, set buyer eligibility, and regulated its rental.  (*Id.* at ¶¶ 7, 10, 12.)

In September 2020, Johnston—intending to sell the BMR Unit—contacted a real estate agent, signed a listing agreement, and ordered pre-sale disclosures.  (*Id.* at p. 4.)  After engaging with the City to set the sale price, Johnston listed the BMR Unit in late November or early December 2020.  (*Id.* at ¶ 8.)  A Program lottery on or about December 19, 2020 yielded seven applicants, but all lottery applicants withdrew by January 7, 2021.  (*Id.* at ¶ 9.)  The buyer eligibility was expanded to all Program candidates, but Johnston received no purchase offers "because of [the City's] price and restrictions on buyers' return on investment."  (*Id.* at ¶ 10.)  Johnston reduced the sale price in July 2021, but the BMR Unit still did not sell.  (*Id.* at ¶ 11.)  By August 2021, one month after reducing the sale price, Johnston "gave up" on the sale of her property and removed the BMR Unit from the market.  (*Id.*)

In 2022, the City investigated potential misuse of the BMR Unit and determined that Johnston had rented out the BMR Unit in violation of the Program's contracted terms.  (*Id.* at ¶ 12.)  Johnston takes issue with the investigation and determination, stating that she "has never received rental income" from the BMR Unit, and she is informed and believes that "her soon-to-be-former husband let someone live in the unit, and that person paid her husband rent."  (Dkt. No. 1-5 (Ex. 5) ¶ 13.)

On May 16, 2024, the City filed a Complaint in the Superior Court of California.  (Dkt. No. 1-1 (Ex. 1).)  The City alleged that Johnston violated the Program's conditions by failing to live in the BMR Unit as a primary residence and illegally renting out the BMR Unit since at least 2018.  (Dkt. No. 1-1 (Ex. 1) ¶ 25.)  The City asserted two claims: (1) violation of the San Francisco Planning Code and (2) Unlawful, Unfair, and Fraudulent Business Practices.  (*Id.* at ¶ 3.)

On March 21, 2025, Johnston filed this Cross-Complaint asserting four claims: (1) Inverse

---

[1] Although Johnston does not allege a specific date of purchase for the BMR Unit in her Cross-Complaint, the City's Complaint alleges the purchase date of October 26, 2015.  (Dkt. No. 1-1 (Ex. 1) ¶ 18.)

Condemnation/Regulatory Taking, (2) Procedural Due Process violation, (3) Substantive Due Process violation, and (4) Equal Protection violation. (Dkt. No. 1-5 (Ex. 5).) It is not clear from the Cross-Complaint whether Johnston asserts these causes of action pursuant to the United States Constitution, the California Constitution, or both. At oral argument, Johnston represented that, if given the opportunity, she would amend her Cross-Complaint to include claims under both the United States and California constitutions and that she would separate the first four claims into eight claims. (Dkt. No. 16.)

The City removed the case to this Court on April 22, 2025. (Dkt. No. 1.) On May 1, 2025, the City brought a motion to dismiss Johnston's Cross-Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 6.) On May 30, 2025, Johnston filed an opposition to the City's motion to dismiss. (Dkt. No. 12.) On June 13, 2025, the City filed a reply in support of its motion to dismiss. (Dkt. No. 14.) The Court heard oral argument on July 21, 2025. (Dkt. No. 16.)

**A.      Applicable Legal Standard on Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. On a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rather, a plaintiff must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

3

*Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile.  *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by, Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).  However, documents subject to judicial notice, such as matters of public record, may be considered on a motion to dismiss.  *See Harris v. Cnty of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2011).  In doing so, the Court does not convert a motion to dismiss to one for summary judgment.  *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).  "The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . ." *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

**B.     The City's Motion to Dismiss.**

Johnston alleges two distinct theories of how the City injured her: (1) implementing restrictions that prevented the BMR Unit from selling (hereinafter the "Alienability" Injury) and (2) erroneously concluding that Johnston violated Program terms and threatening her with high fines and penalties (hereinafter the "Enforcement" Injury).  (Dkt. No. 1-5 (Ex. 5).)

In its motion to dismiss, the City contends that (1) Johnston's claims are time-barred, (2) Johnston does not advance any theory of liability under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), (3) Johnston has failed to allege facts sufficient to state any federal constitutional claims, and (4) the City is immune from Johnston's state law claims.  (Dkt. No. 6.)

As each of Johnston's alleged injuries raise distinct legal issues, the Court addresses them separately.

**1.     The Statute of Limitations Precludes Johnston's Claims Premised on the Alienability Injury.**

A statute of limitations defense can be asserted in a motion to dismiss "if the running of

4

the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Claims brought under 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury suits. *Flynt v. Shimazu*, 940 F.3d 457, 461 (9th Cir. 2019). In California, the statute of limitations for personal injury suits is two years. Cal. Code Civ. P. § 335.1. Here, both parties agree that the applicable statute of limitations period is two years. (Dkt. No. 8, p. 8; Dkt. No. 6, p. 12.) The Cross-Complaint was filed on March 21, 2025. (Dkt. No. 1-5 (Ex. 5).) Thus, Johnston's claims must have accrued later than March 21, 2023 in order to be timely.

The accrual date for claims under § 1983 is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, the "discovery rule of accrual" provides, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Bird v. Department of Human Services*, 935 F.3d 738, 743 (9th Cir. 2019) (per curiam) (citation omitted). In *Bird*, the plaintiff challenged her placement on a child abuse registry more than two years after she learned that she was listed on the registry. *Id.* at 739. The Ninth Circuit rejected the plaintiff's argument "that a claim seeking 'injunctive relief to invalidate an [ongoing] unconstitutional statutory and regulatory scheme' does not accrue until the statute is repealed," reasoning that "such a position would essentially nullify all statutes of limitations with respect to statutory challenges." *Id.* at 744-45 (internal quotation marks and citation omitted). The court therefore applied the discovery rule of accrual to find that the plaintiff's complaint was time-barred. *Id.* at 744.

Like the plaintiff in *Bird*, Johnston argues that facial statutory challenges are somehow exempt from the discovery rule of accrual. (Dkt. No. 12, p. 5.) As *Bird* established, no such exemption exists. 935 F.3d at 744. Accordingly, the discovery rule of accrual applies, and Johnston's claim accrued when she "kn[ew] or has reason to know of the injury which is the basis of the action." *Id.* at 743. Here, the "injury which is the basis of the action," *id.*, is "setting the price of the BMR unit and restricting buyers' return on investment so [the BMR Unit] would not sell," (Dkt. No. 1-5 (Ex. 5) ¶ 21.). At the very latest, Johnston knew or had reason to know of the alienability restrictions on the BMR Unit in August 2021, when she removed the BMR Unit from

the market due to its failure to sell. (Dkt. No. 1-5 (Ex. 5) p. 4.) Accordingly, Johnston's claims accrued years before the limitations period began on March 21, 2023.

Johnston relies on *Flynt* to argue that her claims are not time-barred because the Program "constantly—on a daily basis—deprives her of her constitutional right to sell her property." (Dkt. No. 12, p. 9.) In *Flynt*, the Ninth Circuit explained that "when the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitations period commences)." 940 F.3d at 462. There, the plaintiffs challenged two California gambling laws that "operate[d] on an ongoing basis to prohibit them from investing significantly in numerous casinos outside of California" and that were enforced every two years as part of the state's license renewal process. *Id.* at 462-63. The court held that the plaintiffs "suffer[ed] a new injury each time they abstain from investing for fear" of the statutes' enforcement. *Id.* at 463. Critically, the court "observe[d] that such injuries occurred during the limitations period" based on the plaintiffs' allegations of "specific forgone investment opportunities from" dates within the limitations period and a "present inability to invest." *Id.* at 463.

*Flynt* is distinguishable. Here, Johnston alleges neither specific failed attempts to sell within the limitations period, nor a present inability to sell. Rather, she alleges one specific failed attempt to sell in 2020-2021, which was well before the limitations period. (Dkt. No. 1-5 (Ex. 5) ¶¶ 6-11.) And far from alleging a present inability to sell, Johnston alleges that she "gave up" on selling the BMR Unit and "took the Property off the market" by August 2021—well before the limitations period. (*Id.* at ¶ 11.) As noted above, Johnston filed her Cross-Complaint on March 21, 2025, and the two-year statute of limitations applies. Thus, her claim expired in August 2023.

Further, *Flynt* considered a facial statutory challenge under the dormant commerce clause, 940 F.3d at 464, whereas this case involves challenges to a government program based on theories of takings, violation of due process, and violation of equal protections. Different types of claims raise distinct statute of limitations issues. *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993) (distinguishing facial and as-applied takings claims), *overruled on other grounds by Knick v. Township of Scott,* 588 U.S. 180 (2019); *see also California Ass'n for Pres. of Gamefowl v. Stanislaus Cnty.*, No. 120CV01294ADASAB, 2023 WL 1869010, at *8 (E.D. Cal.

1  Feb. 9, 2023) (explaining that the holding in *Flynt* "only applied to a facial challenge under the
2  dormant commerce clause" and did not apply to a facial takings claim), *report and*
3  *recommendation adopted*, No. 120CV01294ADASAB, 2023 WL 3862717 (E.D. Cal. June 7,
4  2023*), aff'd*, No. 23-15975, 2024 WL 4688890 (9th Cir. Nov. 6, 2024); *Citizens Allied for*
5  *Integrity and Accountability, Inc. v. Miller*, No. 121cv00367DCN, 2023 WL 2574695, at *6 (D.
6  Idaho Mar. 9, 2023) (distinguishing *Flynt*—a facial constitutional challenge against a statutory
7  scheme—from a challenge to the effects of two state administrative decisions).  Johnston provides
8  no legal authority extending *Flynt* to the claims at issue here.

9  Johnston also cites *Virginia Hosp. Ass'n v. Baliles* 868 F.2d 653 (4th Cir. 1989) and
10 *Kuhnle Brothers, Inc. v. County of Geauga* 103 F.3d 516 (6th Cir. 1997) to support her argument
11 that "the statute of limitations does not present a challenge to a claim for relief" for continued
12 enforcement of an unconstitutional statute.  (Dkt. No. 12, p. 8.)  Unlike here, both cases involved
13 allegations of specific injuries within the limitations period.  *Virginia Hosp. Ass'n,* 868 F.2d at 663
14 (challenging a "current" reimbursement plan.); *Kuhnle Brothers, Inc.,* 103 F.3d 516 at 522
15 (challenging a through-truck traffic ban that diverted the plaintiff's trucks during the limitations
16 period.)

17 Lastly, Johnston urges the Court to apply the "continuing violations doctrine" to find that
18 her claims are timely.  The "continuing violations doctrine" provides a very narrow exception to
19 the discovery rule of accrual.  *Bird,* 935 F.3d at 743 (citation omitted).  The "continuing violations
20 doctrine" applies in two cases: a series of acts giving rise to a single violation, or a systematic
21 policy or practice of discrimination.  *Id.* at 746.  However, "the Supreme Court largely eliminated
22 that doctrine when it held in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002),
23 that 'discrete discriminatory acts are not actionable if time barred, even when they are related to
24 acts alleged in timely filed charges.'"  *Ellis v. Salt River Project Agric. Improvement & Power*
25 *Dist.*, 24 F.4th 1262, 1273 (9th Cir. 2022) (quoting *id.* at 113).  "[T]he serial acts branch is
26 virtually non-existent" except in hostile work environment claims.  *Bird,* 935 F.3d at 748.  And the
27 systematic branch is reserved for class-wide-pattern-or-practice claims, not individual claims.  *Id.*
28 Neither exception applies here.

7

In conclusion, Johnston's claims premised on her Alienability Injury accrued when she knew or had reason to know that there were restrictions impacting the sale of the BMR Unit. Thus, her claims accrued at the latest in August 2021, well before the limitations period, and the "continuing violations doctrine" does not apply to resuscitate it. As Plaintiff cannot cure the fact that her claims are time-barred through amendment, the Court DISMISSES Plaintiff's claims premised on the Alienability Injury WITH PREJUDICE.

Neither the Cross-Complaint nor the briefing addresses when the Enforcement Injury occurred or whether it accrued within the limitations period. Because the running of the statute of limitations is not "apparent on the face of the complaint," *Jablon*, 614 F.2d at 682, the Court cannot conclude that claims premised on the Enforcement Injury are time-barred. Thus, the motion to dismiss the enforcement claim on this basis only is DENIED without prejudice. There are further problems with the Enforcement Injury, as discussed below.

**2.    Johnston's Claims Premised on the Enforcement Injury Fail to State a Claim.**

Johnston's Cross-Complaint is fatally vague as to how the Enforcement Injury—the City's investigation and enforcement action against Johnston—violated Johnston's rights. In her Cross-Complaint, Johnston devotes only three distinct sentences, with considerable overlap, regarding her Enforcement Injury. First, "Cross-Defendants claimed Cross-Complainant rented her unit out at market rates and threatened Cross-Complainant with outrageously high fines and penalties." (Dkt. No. 1-5 (Ex. 5) p.3.) Second, "Cross-Defendants . . . investigated and erroneously determined that Cross-Complainant violated BMR rental regulations by illegally renting the unit." (*Id.* at ¶ 12.) Third, "Cross-Defendants followed the above wrongful actions with tasking the City Attorney's office to investigate alleged violations of BMR renting rules, which resulted in erroneous conclusions and the threat of outrageously high fines and penalties of Cross-Complainant did not sell her unit and hand over all proceeds from the sale." (*Id.* at ¶ 20.) Johnston then repeats the same allegations, with no additional facts, applied to each claim. (*Id.* at ¶¶ 25, 29, 33.)

Johnston's allegations are insufficient to give the City notice of the grounds for her entitlement to relief. *See Twombly*, 550 U.S. at 555. Furthermore, Johnston acknowledged at oral

8

argument that she would be required to plead additional facts to state a claim based on the Enforcement Injury if given the opportunity to amend her Cross-Complaint. (Dkt. No. 16.) Accordingly, the Court DISMISSES Johnston's claims premised on the Enforcement Injury but grants LEAVE TO AMEND to add additional factual allegations to support her claims.

At oral argument, Plaintiff's counsel admitted voluntarily that he is not an expert in Constitutional law. Ignorance does not excuse failure to conduct basic legal research, and the Court presumes that any attorney who has passed a state bar examination understands basic concepts of Constitutional law and the ability to read and understand case law. The Court cautions Plaintiff not to bring claims that are clearly not supported by the law. For example, at oral argument, Plaintiff's counsel averred that poverty is a basis for the claim under the equal protection clause, which is not a valid legal argument. *Harris v. McRae*, 448 U.S. 297, 323 (1980) ("[P]overty, standing alone is not a suspect classification.").

## CONCLUSION

Under either of Johnston's injuries, each claim is either time-barred or fails to state a claim. Thus, the Court need not address the City's alternative grounds for dismissal. For the foregoing reasons, the Court GRANTS the City's motion to dismiss. The Court allows leave to amend as to Johnston's claims based on the Enforcement Injury but not based on the alienability injury. If Johnston elects to file an amended complaint to cure deficiencies described in this Order, she shall do so by no later than August 22, 2025.

**IT IS SO ORDERED**.

Dated: July 22, 2025

_____
SALLIE KIM
United States Magistrate Judge

9