GARY LIVAICH, SBN 084186
BRIAN MANNING, SBN 241512
KRISTEN RENFRO, SBN 259162
BENJAMIN TAGERT, SBN 330242
JAMES SILVERTHORN, SBN 354254
DESMOND, NOLAN, LIVAICH & CUNNINGHAM
15th & S Building
1830 15th Street
Sacramento, California 95811
Telephone: (916) 443-2051
Facsimile: (916) 443-2651
Email: Krenfro@dnlc.net

Gregory J. Wood (200780)
WOOD LITIGATION, APC
235 Montgomery Street, Suite 415
San Francisco, California 94104
Telephone: (415) 247-7900
Email: gwood@woodlitigation.com

Attorneys for Defendant and Cross-Complainant
KELLY ANN DOMINGUEZ JOHNSTON

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISO DIVISION

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation; and the PEOPLE OF THE STATE OF CALIFORNIA, by and through David Chiu, City Attorney for the City and County of San Francisco, <br><br> Plaintiffs, <br><br> v. <br><br> KELLY ANN DOMINGUEZ JOHNSTON, an individual, and DOE ONE through DOE TEN, <br><br> Defendants. | Case No.: 3:25-cv-03518 SK <br><br> **KELLY ANN DOMINGUEZ JOHNSTON'S OPPOSITION TO MOTION TO DISMISS** <br><br> Hearing Date: November 10, 2025 <br> Hearing Judge: Hon. Sallie Kim <br> Time: 9:30 a.m. <br> Place: 450 Golden Gate Avenue <br> Courtroom C, 15th Floor <br> San Francisco, California <br><br> Date Action Filed: September 20, 2018 <br> Trial Date: Not set |
| KELLY ANN DOMINGUEZ JOHNSTON, an individual, <br><br> Cross-Complainant, <br><br> v. <br><br> MAYOR'S OFFICE OF HOUSING AND COMMUNITY DEVELOPMENT, a City and County of San Francisco organization, and ROES ONE through ROES TEN, <br><br> Cross-Defendants. | |

**KELLY ANN DOMINGUEZ JOHNSTON'S OPPOSITION TO MOTION TO DISMISS, CASE NO. 3:25-cv-03518 SK**

# TABLE OF CONTENTS

I.   SUMMARY OF ARGUMENT………………………………………….……..……..5

II.  LEGAL STANDARD ON MOTION TO DISMISS……………………………….6

III. CLAIMS PLED IN THE FAC ARE BASED
     ON ENFORCEMENT, NOT INJURY RESULTING
     FROM PRICE SETTING BY THE CITY………………………………….……….6

   A. The Allegations of the FAC Emphasize Enforcement
      and the Unreasonable Burden on Johnston's Rights…...............................6

   B. Reference to Johnston's Inability to Transfer Her Property
      or the Burdens Impacting Her Ability to Sell Do Not Present
      the Alienability Claim Previously Considered and Dismissed
      By the Court……………………………………………………………….....7

IV.  JOHNSTON'S TAKING AND SUBSTANTIVE DUE PROCESS CLAIMS
     ARE LEGALLY SUPPORTED……………………………………..…….8

   A. The Claims Are Timely…………………………………………….8

   B. To the Extent *Monell* Is Applicable, It Is Not a Bar
      Johnston's Claims………………………………………………………9

   C. The City Fails to Properly Analyze Johnston's
      Taking Claim……………………………………………………..……..10

      1. The City's enforcement action erroneously assumes the effectiveness
         of a waiver of a constitutional right………………………………………12

      2. The doctrine of unconscionability further dictates against concluding
         Johnston voluntarily agreed to be subject to the City's harsh enforcement
         approach……………………………………………….............................13

   D. City's Arguments Concerning Johnston's Substantive
      Due Process Claim Miss the Mark………………………..…………...15

V.   CONCLUSION…………………………………………...………….16

# TABLE OF AUTHORITIES

**Federal**

**United States Supreme Court**

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ..........................................................................................................................6

*Curtis Pub. Co. v. Butts*,
 388 U.S. 130 (1967).........................................................................................................................12

*First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*,
 482 U.S. 304 (1987).........................................................................................................................11

*Johnson v. Zerbst*
 304 U.S. 458 (1965).........................................................................................................................12

*Lingle v. Chevron U.S.A. Inc.*
 544 U.S. 528 (2005)....................................................................................................................11, 15

*Monell v. Dep't of Soc. Servs. of City of New York*,
 436 U.S. 658 (1978).............................................................................................................5, 6, 9, 10

**Other Federal**

**Ninth Circuit**

*Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*,
 509 F.3d 1020, 1026 (9th Cir. 2007)...............................................................................................15

*Crown Point Dev., Inc. v. City of Sun Valley*,
 506 F.3d 851 (9th Cir. 2007) ..........................................................................................................16

*Sanders v. Kennedy*,
 794 F.2d 478 (9th Cir. 1986) ............................................................................................................6

*Squaw Valley Development Co. v. Goldberg*
 375 F.3d 936 (9th Cir. 2004) .........................................................................................................15

**Other Circuits**

*Fulton v. Fulton Cnty. Bd. of Commissioners*,
 148 F.4th 1224 (11th Cir. 2025).................................................................................................9, 10

/ / /

**State**

**California Supreme Court**

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
   24 Cal.4th 83 (2000) ........................................................................................................... 14

*Sonic-Calabasas A, Inc. v. Moreno*,
   57 Cal.4th 1109 (2013) ....................................................................................................... 14

*Isbell v. Cnty. of Sonoma*,
   21 Cal.3d 61 (1978) ............................................................................................................ 12

*People v. Panizzon*,
   13 Cal.4th 68 (1996) ........................................................................................................... 12

**Courts of Appeal**

*City of Glendale v. George*,
   208 Cal.App.3d 1394 (1989) ............................................................................................... 12

*County of Ventura v. Channel Islands Marina, Inc.*,
   159 Cal.App.4th 615 (2008) ............................................................................................... 11

*Ferlauto v. Hamsher*,
   74 Cal.App.4th 1394 (1999) ............................................................................................... 12

*Rodriguez v. Superior Court*,
   176 Cal.App.4th 1461 (2009) ............................................................................................. 12

**Constitutional Provisions**

U.S. Const. amend. V .................................................................................................... 5, 6, 9, 10

**Statutes**

42 U.S.C. §1983 .................................................................................................................. 5, 8, 9

CCP §318 .................................................................................................................................... 9

CCP §338(j) ................................................................................................................................ 9

Defendant and cross-complainant Kelly Ann Dominguez Johnston ("Johnston") respectfully submits this brief in opposition to plaintiffs and cross-defendants City and County of San Francisco's and the People of the State of California ("City")'s Motion to Dismiss ("Motion").

## I. SUMMARY OF ARGUMENT

The claims Johnston has pled in her First Amended Complaint ("FAC") are not based on alienability – or, rather her practical inability to sell her property due to the City dictating the price at which she might sell it. What she has pled is a taking and violation of her substantive due process rights based on the City's actions to enforce provisions of its BMR rental regulations through the imposition of substantial monetary penalties and its efforts to collect same via its pending enforcement action. It is this harm for which she now seeks redress.

Johnston's claims are not time-barred; she has adequately pled facts in support of them; and the City's good intentions with respect to the objectives of its public program do not insulate it from the constitutional mandate that it pay Johnston just compensation where the consequence of implementation is a taking or damaging of Johnston's property interests. Assessment of fault is not part of the analysis in an inverse condemnation action, which does not sound in tort. The legitimacy of the City's reasons for pursuing its program are not at issue, and the City does not enjoy immunity from Johnston's constitutional claims.

Moreover, Johnston has not alleged any breach of contract and seeks no contractual remedies. Her right to just compensation derives directly from the Fifth Amendment. Despite the fact her taking claims was properly framed as a 42 U.S.C. §1983 claim, the constitutionally guaranteed remedy of just compensation is not contingent upon legislative provision. To the extent *Monell* is applicable to Johnston's substantive due process claim and, potentially, her takings claim, she has satisfactorily pled one or more of the bases for *Monell* liability. However, even if that were not the case, the weight of persuasive authority holds that she may

maintain her Fifth Amendment claim as an independent cause of action irrespective of *Monell* requirements.

## II. LEGAL STANDARD ON MOTION TO DISMISS

As the Court indicated in its prior order, the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). Although a plaintiff may not rely on mere labels and conclusions, she need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. CLAIMS PLED IN THE FAC ARE BASED ON ENFORCEMENT, NOT INJURY RESULTING FROM PRICE SETTING BY THE CITY.

The Court previously rejected what was denominated an "alienability" claim – based on a component of Johnston's previously pled claims that complained of injury based on price setting by the City. But Johnston's claim, as pled in the FAC, is not that the City's price setting has caused injury, or that she has been damaged simply by her inability to sell, but that the City's subsequent reaction to Johnson's manner of use and enjoyment of her property, which culminated in an enforcement action against her seeking enormous monetary penalties, is what has effected a taking or damaging of her interests.

### A. The Allegations of the FAC Emphasize Enforcement and the Unreasonable Burden on Johnston's Rights.

Johnston has expressly pled violations of her rights based on the "imposition and enforcement of restraints on her use and enjoyment" of her property. FAC, 1:8. She has pled that the City's program "as interpreted and applied to [her], including, but not limited to, the nature and extent of MOHCD's investigation and its coercive regulatory enforcement tactics, have effected a taking or damaging of [her] ownership rights." FAC, 2:26-28. She has further alleged that the City has "pursued an unwarranted investigation and erroneously determined that Johnston has

1  violated BMR rental regulations by illegally renting the unit." FAC, 4:14-16. She
2  has alleged the City "has made it impossible for [her] to make any economic or
3  beneficial use of the Grove Street Property." FAC, 5:6-7.
4        Alternatively, Johnston has alleged she is being denied the right to make
5  "legitimate use of the Grove Street Property, to choose whether to occupy the
6  Property or not, to transfer the property, and to otherwise exercise all traditional
7  rights of ownership of her real property." FAC, 6:12-14. She has alleged that "with
8  the specter of the pending suit against her," she is being "compelled, without
9  payment of just compensation, to retain the burden of holding title to the Property,"
10 while being "compelled, through threat of economic penalty, to reside in the Grove
11 Street Property, and to be foreclosed from generating an economic return through
12 the rental of the Property to cover the costs of ownership." FAC, 5:22-26.
13       All of these allegations focus on the City's enforcement and how Johnston has
14 been burdened in her use and enjoyment of her property and rights therein. To the
15 extent alienability is referenced at all, Johnston's pleading does not emphasize or
16 rely upon claims concerning her inability to dictate the price term or to sell her
17 property as a result of the price set by the City.

**B. <u>References to Johnston's Inability to Transfer Her Property or the Burdens Impacting Her Ability to Sell Do Not Present the Alienability Claim Previously Considered and Dismissed.</u>**

20       Any references to in the FAC to Johnston's inability to transfer her property
21 were not pled with the intention of articulating a theory of liability centered on the
22 previously-dismissed alienability claim, but in necessary incidental reference to her
23 bundle of sticks and the broader picture of how the collective bundle has been
24 stripped bare by the City enforcement, and to provide proper context concerning her
25 attempts to use and enjoy her property in the wake of an unsuccessful attempt to
26 sell. She has asserted, in terms intended to drive home the severity of the "collective
27 effect" of the City's enforcement of its regulations, that the City has "transformed
28 [her] position from that of a property owner to one of an indentured servant to

7

MOHCD – forcing her without compensation to fulfill the roles of occupant, manager, and bankroller for the Inclusionary Housing Program."

Although this characterization may sound like hyperbole, the reality of Johnston's situation is truly dire. The amount of the penalties the City seeks from her vastly exceeds the $0 she has ever received in rent from her unit. Johnston does not admit her property was "illegally rented." She has never received any rental payment. But now the City seeks $792,000 in penalties – an amount that exceeds the fair market value of her property at the time she purchased it – $650,000 – by more than $140,000, and which is more than double the amount of her purchase price of the property.

Nothing about Johnston's allegations runs afoul of the Court's prior order. Johnston's suit is properly framed to emphasize the burden imposed by the City's enforcement action. Therefore, the Court should reject the City's attempts to mischaracterize Johnston's pleading and deny the City's Motion because Johnston's claims have been properly pled.

### IV. JOHNSTON'S TAKING AND SUBSTANTIVE DUE PROCESS CLAIMS ARE LEGALLY SUPPORTED.

Johnston has clearly not abandoned her "enforcement" claim. To the contrary, reading the allegations of the FAC together, it should be clear the City's enforcement action and the investigation and threats leading up thereto are the heart of Johnston's case.

#### A. The Claims Are Timely.

Assuming the two-year statute of limitations applicable to 42 U.S.C. §1983 claims generally applies in this case, Johnston's claims are timely. The City's enforcement action was not filed until May 16, 2024, and Johnston's Cross-Complaint was filed on March 21, 2025, well within the two-year limitations period. The scope and extent of Johnston's claim was unknown until such time as the City sued her, making good on threats to impose substantial penalties against her. Prior

to such date, legal action by Johnston would have been premature. The City's suit represented a final action by the City, solidifying its position concerning enforcement, and causing Johnston to incur substantial expense to mitigate her damages by retaining legal counsel to respond to the City's suit.

Further, the two-year statute of limitations may be inapplicable as to the takings claim because Johnston's right to just compensation arises directly from the Fifth Amendment, and, although the Supreme Court has yet to definitively resolve the issue, the Eleventh Circuit recently held that the procedural vehicle of a 1983 claim is unnecessary to support a Fifth Amendment taking claim and determined that, as a result, longer applicable statutes of limitation for the taking or damaging of property are properly applicable. *Fulton v. Fulton Cnty. Bd. of Commissioners*, 148 F.4th 1224, 1236-38 (11th Cir. 2025) (concluding in that case that "the limitations period for the recovery of personal property—four years—governs . . . because it's the most substantively similar action" and would apply if state-law claim state-law "claim grounded in the Takings Clause" were brought). In California, that approach dictates application of either a three-year statute of limitations for the damaging of real property pursuant to CCP §338(j) or a five-year statute of limitations for a taking pursuant to CCP §318.

### B. To the Extent *Monell* Is Applicable, It Is Not a Bar to Johnston's Claims.

There is no substance to the City's *Monell* argument. This case is one that "unquestionably involves official policy as the moving force of the constitutional violation." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). If not, one would wonder why the City did not have a policy of enforcement of its regulations or to enforce them uniformly. The City has a program, a manual, and a process for enforcement it is carrying out. Johnston is not challenging the rogue actions of some City staff person. The City's duly authorized representatives and attorneys are executing the City's "policy or custom," and Johnston alleges this

has caused her injury. *Id.*

Unsurprisingly, the City fails to cite any case law concerning the application of *Monell* to takings claims. Cases in which the government argues a takings claim does not satisfy *Monell* are few and far between. Fifth Amendment takings claims are not tort-based claims, and the *Monell* doctrine cannot bar them. The Ninth Circuit does not appear to have considered the matter directly. Nor has the Supreme Court finally resolved the question. However, the Eleventh Circuit recently so held in *Fulton v. Fulton County Board of Commissioners*, 148 F.4th 1224. The *Fulton* court, with the aid of invited amicus briefing, engaged in an extensive analysis of the issue, and published an opinion that offers a thorough and compelling set of arguments demonstrating when the *Monell* doctrine cannot bar a property owner's access to the remedy of just compensation assured by the Constitution for a taking of property when the elements of a claim are otherwise demonstrated. Simply put:

> Our Constitution explicitly promises exactly two remedies: "just compensation" if the government takes our property, and the writ of habeas corpus if it tries to take our lives or liberty. And the Constitution delivers directly on each. . . . So even if Congress doesn't legislate a procedure by which a person can obtain one of these remedies, the Constitution's promise is not illusory. A person can bring a case directly invoking either constitutional remedy.

*Id.* at 1232. "Congress can't prescribe an exclusive remedy for uncompensated takings that is more restrictive than the Takings Clause's guarantee of 'just compensation.'" *Id.* at 1258. "[T]he Takings Clause mandates compensation for litigants who have suffered takings by government employees acting within the normal scope of their duties, whether under official local policy or not." *Id.*

For these reasons, the Court should decline to deem *Monell* a bar to Johnston's claims.

C. **The City Fails to Properly Analyze Johnston's Taking Claim.**

Whether or not the City's program serves an "important governmental

purpose" is not part of the relevant test to evaluate whether a compensable taking or damaging has occurred. It's been 20 years since the Supreme Court discarded a logically untenable test for takings liability that considered whether a challenged regulation substantially advanced a legitimate public purposes in its holding in *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005). As the Supreme Court explained in so doing:

> Instead of addressing a challenged regulation's effect on private property, the "substantially advances" inquiry probes the regulation's underlying validity. But such an inquiry is logically prior to and distinct from the question whether a regulation effects a taking, for the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose. The Clause expressly requires compensation where government takes private property "*for public use.*" It does not bar government from interfering with property rights, but rather requires compensation "in the event of *otherwise proper interference* amounting to a taking." . . . Conversely, if a government action is found to be impermissible—for instance because it fails to meet the "public use" requirement or is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action.

*Lingle, supra*, 544 U.S. at 543 (internal citation to *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*, 482 U.S. 304, 315 (1987) omitted) (emphases in original).

Nor does Johnston seek to transform a breach of contract claim into a constitutional one. Johnston does not allege the City has breached any contract, so she is certainly not attempting "to impose extracontractual liability for breach" in the manner the plaintiff in *County of Ventura v. Channel Islands Marina, Inc.*, 159 Cal.App.4th 615, 625 (2008), unsuccessfully did. It is the City who contends Johnson breached terms of its program. Johnston asserts the City's efforts to enforce the terms in the manner it has effected a taking or damaging, or, in the alternative, has resulted in a violation of her substantive due process rights. Johnston's theory is that the City's enforcement of contractual terms has resulted in the taking of damaging of her property interests, and that she is entitled to just compensation therefore, a constitutional remedy she never knowingly waived,

11
KELLY ANN DOMINGUEZ JOHNSTON'S OPPOSITION TO MOTION TO DISMISS, CASE NO. 3:25-cv-03518 SK

irrespective of the terms contained in documents she was presented with and signed at the time she purchased her property. Even if an effective waiver were conceivable, enforcement should otherwise be barred by the doctrine of unconscionability, such that Johnston's claim ought not be barred based on contractual obligation. And the Court should not prematurely foreclose the issue.

1. <u>The City's enforcement action erroneously assumes the effectiveness of a waiver of a constitutional right.</u>

The City contends Johnston is attempting to "constitutionalize terms that she voluntarily entered into." City MPA, 12: 22-23. But the City's argument – and its suit against Johnston – is premised upon a faulty assumption that she waived her constitutional right to just compensation for the taking of her property rights by contracting with the City. The Court should reject the premise.

"'[I]t is well established that courts closely scrutinize waivers of constitutional rights, and indulge every reasonable presumption against a waiver.'" *Ferlauto v. Hamsher*, 74 Cal.App.4th 1394, 1399–1400 (1999) (quoting *City of Glendale v. George*, 208 Cal.App.3d 1394, 1398 (1989)). "[A]n effective waiver must . . . be one of a 'known right or privilege.'" *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 143 (1967) (quoting *Johnson v. Zerbst* (1965) 304 U.S. 458, 464); accord *Isbell v. County of Sonoma*, 21 Cal.3d 61, 68–69 (1978)). This is uniform across the spectrum of constitutional rights. See, e.g., *People v. Panizzon*, 13 Cal.4th 68, 80 (1996) (criminal "defendant's waiver of the right to appeal must be knowing, intelligent, and voluntary."; *Rodriguez v. Superior Court*, 176 Cal.App.4th 1461, 1467 (2009) (Civil litigant's "waiver of the right to a jury trial must be knowing and voluntary."); *Isbell v. Cnty. of Sonoma*, 21 Cal.3d 61, 68 (1978) (confession of judgment must demonstrate the debtor has made a voluntary, knowing, and intelligent waiver in order to effect a valid waiver of due process rights); and *Ferlauto*, *supra*, 74 Cal.App.4th at 1399–1400 (quoting *Curtis Pub. Co.*, *supra*, 388 U.S. at 145 (waiver of First Amendment rights must be "clear and compelling").

Nowhere, in any of the documentation signed by Johnston at the time she purchased her property was there ever a disclosure that she was waiving property rights for which she might have a claim to just compensation for forgoing. Relevant terms are not fully and clearly spelled out in anything Johnston signed. There was a 79-page monitoring and procedures manual she would have had to study and fully appreciate in order to understand the extent of the scope of the rights she was foregoing. And nothing in that entire manual appears to have flagged the fact that the terms of the program represented significant restraints on fundamental aspects of traditional property rights or gave any kind of warning that of the nature or extent of penalties the City might impose for violations of the City's program.

The word "penalty" appears nowhere in the documentation. Nor are there any references to consequences for any "violation" pursuant to the Planning Code of the B&P Code or the prospect that the City would attempt to extract monetary fines for violations of the program, with the exception of limited references to enforcement procedures and administrative penalties on pages 9 and 11 of an 11-page recorded Notice of Special Restrictions under the Planning Code document, to which Johnston was not a signatory, which was executed by the owner of the property in 2013. The Manual itself supplies no information regarding violations whatsoever. And the rules were apparently deemed so complex by the City that it included in the Manual a recommendation that users of it "seek their own legal counsel to aid in understanding the requirements of the Program." City's Complaint, Exhibit 3, Manual p.1.

With these facts in mind, the Court should decline to prematurely conclude Johnston knowingly waived the right to assert a taking claim to pursue her constitutional remedy of just compensation.

2. <u>The doctrine of unconscionability further dictates against concluding Johnston voluntarily agreed to be subject to the City's harsh enforcement approach.</u>

Whether intentionally or not, the City has created circumstances that would

make enforcement of the terms of its program unconscionable. The City controls the inventory of a large number of affordable units in the City. Residents who wish to purchase an affordable unit are compelled to agree to a standard set of terms, without meaningful choice or opportunity to negotiate. The City holds all of the power to impose terms that in ultimate application have proven to be unreasonably and unexpectedly harsh, and one-sided in the City's favor. The City's program requires participants – laypeople, not versed in property or constitutional law – to sign a standardized form, exposing themselves to potential consequences the City fails to clearly advise them of.

Unconscionability doctrine is designed to ensure that in a case such as this, where there is "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party," contractual terms are not imposed in a manner that is "overly harsh," "unduly oppressive," or in a manner that is "so one-sided as to shock the conscience." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1145 (2013) (citation modified; internal citations omitted). The doctrine seeks to ensure that "terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction." *Id.*

An contract of adhesion that "does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against him." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 113–14 (2000) (internal citations omitted). Moreover, "a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable.'" *Id.* (internal citations

omitted).

Johnston does not admit her property was "illegally rented." But even assuming for the sake of argument that she is in breach of her contractual obligations to the City, the City is seeking $792,000 in collective penalties against her, plus recovery of litigation expenses for the City's prosecution of its enforcement action. A suit for penalties and litigation expenses that, all told, will approach *one million dollars*, most certainly does shock the conscious in a case in which Johnston has profited nothing from alleged rental of her unit. Certainly, Johnston never could have imagined she would face such a harsh punitive action by the City. And if she could have reasonably understood she was exposing herself to such a significant risk of liability, she agreed to terms the City dictated, with no ability to influence them or advocate for protections for herself.

### D. City's Arguments Concerning Johnston's Substantive Due Process Claim Miss the Mark.

The Ninth Circuit has held that, for purposes of substantive due process analysis, "landowners have 'a constitutionally protected property interest' in their 'right to devote [their] land to any legitimate use.'" (*Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007) (internal citations omitted).) "An arbitrary deprivation of that right, thus, may give rise to a viable substantive due process claim in any case in which the Takings Clause does not provide a preclusive cause of action." *Id.* And "overzealous and selective regulation" may be deemed to improperly interfere with an owner's use of their real property." (*Squaw Valley Development Co. v. Goldberg* (9th Cir. 2004) 375 F.3d 936, 949, overruled on other grounds by *Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528).

Where a "land use action lacks any substantial relation to the public health, safety, or general welfare," payment of just compensation is an insufficient remedy, such that a substantive due process violation may be shown and improper government interference with a property right may otherwise be prevented or

remedied. *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007).

The relevant inquiry here is not whether the City had a rational basis to devise its program, to operate its program, or to administer its program. The relevant inquiry is whether the City's efforts to seek to financially ruin a program participant the City's program was designed to aid and serve by attempting to secure penalties that well exceed the value of the property and her equity therein. Johnston asserts that the City's enforcement action against her is not merely a grossly disproportionate means for the City to advance its program objectives, but in fact does not advance program objectives at all and constitutes overzealous implementation of the City's regulations in a manner that arbitrarily deprives her of rights. Not only does the City's enforcement action not bear a substantial relationship to public health, safety, or general welfare, it works against it. And Johnston has sufficiently pled her claim to litigate the issue on the merits.

## V.  CONCLUSION

For all of the reasons cited herein, Johnston respectfully requests the Court deny the City's Motion and permit Johnston proceed to litigate her claims on their merits.

Dated: September 23, 2025

**DESMOND, NOLAN, LIVAICH & CUNNINGHAM**

By: _____
KRISTEN RENFRO
Attorneys for Defendant and Cross-Complainant KELLY ANN DOMINGUEZ JOHNSTON

**CERTIFICATE OF SERVICE**

I, KRISTEN RENFRO, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States District Court for the Northern District of California, San Francisco Division by using the appellate CM/ECF system on September 23, 2025.

**KELLY ANN DOMINGUEZ JOHNSTON'S OPPOSITION TO MOTION TO DISMISS, CASE NO. 3:25-cv-03518 SK**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed September 23, 2025, at Sacramento, California

                    _____s/s KRISTEN RENFRO
                         KRISTEN RENFRO