DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 173594
Chief Deputy City Attorney
WADE CHOW, SBN 168527
Chief Attorney
Neighborhood and Resident Safety Division
HUNTER W. SIMS III, SBN 266039
Deputy City Attorneys
Fox Plaza
1390 Market Street, Seventh Floor
San Francisco, California 94102-5406
Telephone:     (415) 554-4259 (Sims)
Facsimile:     (415) 437-4644
E-Mail:        hunter.sims@sfcityatty.org

Attorneys for Plaintiffs and Cross-Defendants
CITY AND COUNTY OF SAN FRANCISCO
(Erroneously sued as MAYOR'S OFFICE OF
HOUSING AND COMMUNITY DEVELOPMENT
[1]) and PEOPLE OF THE STATE OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation; and the PEOPLE OF THE STATE OF CALIFORNIA, by and through Dennis J. Herrera, City Attorney for the City and County of San Francisco,<br><br>Plaintiffs,<br><br>vs.<br><br>KELLY ANN DOMINGUEZ JOHNSTON<br><br>Defendants.<br><br>KELLY ANN DOMINGUEZ JOHNSTON, an individual,<br><br>Cross-Complainant, | Case No. 3:25-cv-03518-SK<br><br>**PLAINTIFFS AND CROSS-DEFENDANTS' REPLY IN SUPPORT OF MOTION AND MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Hearing Date:    November 10, 2025<br>Hearing Judge:   Hon. Sallie Kim<br>Time:            9:30 a.m.<br>Place:           450 Golden Gate Avenue<br>                 Courtroom C, 15th Floor<br>                 San Francisco, California<br><br>Date Action Filed:   September 20, 2018<br>Trial Date:          Not set |

---

[1] The Mayor's Office of Housing and Community Development is a department of the City and County of San Francisco. This department is not a properly joined defendant because it does not have power to sue or be sued, and is not an independent public corporation. (See *Bauer v. County of Ventura* (1955) 45 Cal.2d 276, 288-289; *compare* Gov. Code, §§ 23000, 23004, subd. (a).)

1

v.

MAYOR'S OFFICE OF HOUSING AND COMMUNITY DEVELOPMENT, a City and County of San Francisco organization, and ROES ONE through ROES TEN,

Cross-Defendants.

# INTRODUCTION

Defendant and Cross-Complainant's ("Defendant") opposition makes clear that the claims contained in her First Amended Complaint ("FAC") are solely based on Plaintiffs and Cross-Defendants City and County of San Francisco and the People for the State of California's (collectively "City") decision to bring this lawsuit. Those claims should be dismissed because they are beyond the limitations period, are not ripe, and because the FAC lacks facts demonstrating causation and damages. Further, the filing of a lawsuit is not a proper basis for a takings or substantive due process cause of action, which is a separate and independent basis to grant the City's motion. Leave to amend would be futile since the FAC represents Defendant's best efforts to plausibly allege her remaining claims and Defendant has not requested leave to amend.

# ARGUMENT

## I. THE FAC IS BASED ON ALIENABILITY CLAIMS THE COURT PREVIOUSLY DISMISSED

Defendant surmises that the gravamen of her claims against the City pertain to "the City's actions to enforce provisions of its BMR rental regulations through the imposition of substantial monetary penalties and its efforts to collect the same via its pending enforcement action." Docket No. 24 ("Opp.") at 5. However, a cursory reading of the FAC demonstrates that no such claims are pled.

The Court has previously dismissed Defendants' claims based on a theory of alienability. ECF No. 17. Defendant does not seek to relitigate that holding, and instead unsuccessfully argues these allegations are now linked to a cognizable claim. However, the allegations in the FAC belie this argument. The FAC contains eight paragraphs of "general allegations" supporting Defendant's causes of actions for a taking and substantive due process violation. The first six paragraphs of the "general allegations" describe Defendant's attempted sale of the property beginning in September 2020 through August 2021. Docket No. 18 ("FAC") at ¶¶ 5-10. The factual allegations in these paragraphs go directly to her previously dismissed alienability claim and therefore cannot support any remaining cause of action.

Beyond Defendant's general allegations, it is clear that the FAC is solely intended to seek compensation based on her alienability claims. While the FAC does contain bits of conclusory

allegations that could be interpreted as enforcement related, they are not actionable themselves, and are instead only relevant as part of a larger claim that Defendant's constitutional rights were violated because she cannot realize for full financial gain from her property. *See* FAC at ¶¶ 16, 18. What is left are claims that are either barred by the statute of limitations, unripe due to lack of causation and damages, or do not state a claim for relief.

## II. ANY ENFORCEMENT-BASED CLAIMS ARE BEYOND THE STATUTE OF LIMITATIONS

Defendant does not dispute that she purchased her BMR in October 2015. When she did so, there were a number of restrictions imposed on her in exchange for favorable financing that enabled her to complete the purchase. As has been briefed previously, those limitations include 1) the requirement that she reside at the property, 2) use the property as a primary residence, 3) not rent out the property without the express permission of the City and 4) that the City dictates the resale price based on a formula disclosed in the agreement. Docket No. 1-1 at ¶¶ 18–26, Exs. 2–5. The contract Defendant entered into cautioned that "Failure to comply with the requirements of Planning Code Section 415, any Use Restrictions for the Project, or the Procedures Manual may result in an enforcement action by the City including but not limited to the imposition of penalties under the Planning Code." Docket No. 1-1 at 113 § N.

Defendant nevertheless argues that her claims fall within the limitations period because she had no enforceability claim until the City filed this lawsuit in 2024. Opp. at 8. This is incorrect for two reasons.

First, she has been on notice since October 2015 that any violation of the terms of the contract, including illegally renting the BMR unit or not using the property as her primary residence, may result in the same penalties sought through this lawsuit. Accordingly, Defendant has been on notice of consequences of the limitations on her use of the property since 2015. Even assuming she was not on notice that the City would enforce the terms of at the time of formation, she was aware the City would enforce the contract itself in August 2021 following her failed attempt at selling the property. Under either scenario, Defendant's claims are well beyond the applicable two-year limitations period.

Second, as described below in Section III, the initiation of this lawsuit imposes no specific injury on Defendant. To the extent her injury from this lawsuit accrues at all, it would accrue when a Court accepts the City's interpretation of the contract provisions and imposes liability against her after trial.

Defendant urges the Court to apply either a three-year statute of limitations, a four-year statute of limitations or a five-year statute of limitations for her takings claim. None of those limitation periods apply here. The three-year limitations period outlined in California Code of Civil Procedure Section 338(j) applies to the "physical damage to private property." Plaintiff's cross claim is based on the enforcement of the contract agreement. The FAC does not identify whether the property has been "physically damaged" by the contract that allowed her to obtain her property nor when any physical damage occurred. That code section simply does not apply to the facts before the court. Similarly, California Code of Civil Procedure Section 318 pertains to situations where property has been seized and the plaintiff seeks to recover the seized property. Again, the FAC does not allege the City seized Defendant's property. Indeed, Defendant alleges the opposite; that she is forced to keep the property due to the contract.

Lastly, Defendant asks this Court to apply an out-of-circuit case to extend the limitations period to four years. In *Fulton v. Fulton Cnty. Bd. of Comm'rs*, 148 F.4th 1224, 1235-1238 (11th Cir. 2025), the Eleventh Circuit followed the state of Georgia's statute of limitations for inverse condemnation, in line with the longstanding precedent that a court is to borrow the analogous state statute of limitations in 42 U.S.C. § 1983 cases. The problem for Defendants is that Georgia law does not apply in California. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004) ("California's . . . statute of limitations for personal injury actions applies to § 1983 suits in federal court."); *Elliot v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994) (same); Cal. Civ. Proc. Code § 335.1 (two-year limitations period for California personal injury actions). The Court should disregard any citation to the *Fulton* case as it is not binding and, even if it were, does not use the law of the proper venue, California. Therefore, Defendant's enforcement claims should be dismissed as untimely.

### III. DEFENDANT'S ENFORCEMENT CLAIMS ARE NOT RIPE

With the clarity of Defendant's opposition, it is clear that the gravamen of Defendant's enforcement claim is based on the prospect of losing this lawsuit. Accordingly, her claims must be dismissed because the claimed injury has not yet accrued. Takings claims are ripe only when the government has reached a "final" decision. *Pakdel v. City and Cty. of San Francisco,* 594 U.S. 474, 475 (2019). While the City has certainly alleged that Defendant's conduct amounts to a violation of California's Unfair Competition Law and the San Francisco Planning Code, there has been no "final determination" of whether or not the City's allegations have merit and Defendant cites no case law for her argument to the contrary. This lawsuit is pending and Defendant remains free to defend herself the allegations at issue or bring a claim for declaratory relief. The court—whether this Court or the San Francisco Superior Court—will make that determination based on the evidence and argument submitted in support of the City's complaint. However, there cannot be a final decision until the City's case is decided. Put differently, the FAC does not adequately explain how Defendant has been injured by the City other than by the filing of a lawsuit.

### IV. ANY ENFORCEMENT BY THE CITY DOES NOT AMOUNT TO A TAKING

Defendant attempts to circumvent the legal principle that a takings claim must result in the deprivation of property, by apparently arguing that the threat of fines (i.e. money) resulting from her decision to not use the property as her primary residence and, instead rent out the property, amounts to a taking. While the Ninth Circuit has recognized that "in certain circumstances ... money can be the subject of a taking," those circumstances do not include the facts of this case. *Ballinger v. City of Oakland*, 24 F.4th 1287, 1296 (9th Cir. 2022). Specifically, takings do not occur when a fee is "a monetary obligation triggered by a property owner's actions with respect to the use of their property, not a burden on the property owner's interest in the property." *Id.* at 1297.

The enforcement at issue in this case arises solely out of Defendant's use of her property, not her interest in the property. In order to purchase the property, Defendant agreed to the terms of the BMR program, including those that required she live at the property, use it as her primary residence, and not rent out the property without the City's express permission. *See, e.g.*, Docket No. 1-1 at ¶¶ 18–26, Exs. 2–5 The City alleges Defendant violated the terms the BMR agreement by not using the

property consistent with those terms. These claims are based on Defendant's conduct with respect to her use of the property and nothing else.

In addition, the takings allegations are so bare that they do not contain sufficient factual allegations to support her claim. The allegations are so devoid of facts because Defendant is trying to avoid referencing the BMR contract, since the Court already prohibited that theory of liability. Defendant's opposition begins by disclaiming the notion that her enforcement claims sound in contract, yet ends arguing the contract terms are unconscionable and do not amount to a waiver of her rights. Defendant also blames the City for raising the issue of the contract, and urges the Court to find her claims are separate, without acknowledging that her claims themselves are premised on complaints about the City's conduct in investigating and bringing its own contract claims. Defendant appears to be living in the wrong "but-for" world where she was able to obtain and own the property outright without restriction. However, her rights to the property are based in contract. Without the contract, Defendant would not have the unit at all, so the "but-for" world is not one where she owns the property without any restrictions on its use, but one where she has no ownership interest in the unit, and, therefore, would not have any injury as a result of the City's conduct.

Lastly, Defendant argues that the amount of penalties the City seeks exceed the fair market value of her property. Opp. at 8. Whether or not she is correct, this is legally irrelevant. Defendant assumes there should be a relationship between the penalties sought and the value of the property, but the amount of the penalties are not based on the proper valuation of the unit; they are based on Defendants' unlawful conduct in failing to comply with the contractual terms that required her to live at and use the unit as her primary residence and prohibited her from renting out the unit absent express written permission from the City. There is no legal requirement that the City cannot seek penalties for Plaintiffs' violation of the law that would exceed the value of her property, and certainly no such right founded in the Fifth or Fourteenth Amendments. Further, no penalties have been assessed and, therefore, there is no damage at present. Accordingly, this argument is a red herring and should be ignored.

## V. THE FACTS SUPPORTING DEFENDANT'S ENFORCEMENT CLAIMS DO NOT AMOUNT TO VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS

Defendant must plead that a state actor deprived her of constitutionally protected life, liberty or property interest in order to state a cause of action for substantive due process. *Shanks v. Dressel* 5450 F.3d 1082, 1087 (9th Cir. 2008). "Only the most egregious official conduct" establishes a substantive due process violation. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

The FAC does not identify the substantive due process right Defendant believes has been violated through the City's enforcement. Although Defendant claims she was injured by the City's decision to bring this lawsuit, there is no malicious prosecution claim.[2] There are no allegations that the City brought this case for an improper purpose. Nor are there allegations that the City's enforcement action in this case was arbitrary, biased, pretextual or egregious. The facts pled in the FAC do not put the City on notice of the substantive due process claims and, therefore, should be dismissed.

Defendant's single allegation that "MOHCD further pursued an unwarranted investigation and erroneously determined that Johnson (sic) has violated BMR rental regulations by illegally renting the unit," (FAC at ¶ 11), is too conclusory to meet Defendant's burdens even at the pleading stage and lacks factual allegations explaining what made MOHCD's investigation "unwarranted" or what made its determination that Defendant violated the BMR regulations "erroneous." These conclusory allegations are also contradicted by the facts, including the fact that Defendant conceded her property was rented out, which is a violation of the BMR program rules.

And even if these allegations were considered factual rather than conclusory, they remain inadequate to state a substantive due process claim because at best they describe negligent conduct, but it is well-settled in the Ninth Circuit that negligence or a lack of due care is insufficient to state a

---

[2] While no City employees have been individually named, prosecutorial immunity extends to prosecutorial acts during civil and administrative proceedings and covers "agency officials performing certain functions analogous to those of a prosecutor," or quasi-prosecutorial functions. *Butz v. Economou*, 438 U.S. 478, 515-17 (1978). Courts have applied the immunity to municipal employees involved in code enforcement actions. *See, e.g., Whiteford v. Pennsylvania*, Civil Action No. 12–55, 2012 WL 4076190, at *8 (W.D. Pa. Aug. 13, 2012) (municipal employees had absolute prosecutorial immunity "when representing [the City] in prosecuting the enforcement of the Code against Plaintiff"); report and recommendation adopted Civil Action No. 12–55, 2012 WL 4069570 (W.D. Pa. Sept. 17, 2012); aff'd 524 Fed. App'x 792 (3d Cir. 2013).

substantive due process claim. *Woodrum v. Woodward Cnty., Okla.,* 866 F.2d 1121, 1126 (9th Cir. 1989); *Mario V. v. Armenta, No. 18-cv-00041-BLF,* 2021 WL 1907790 (N.D. Cal. May 12, 2021).

## VI.   LEAVE TO AMEND WOULD BE FUTILE

The Court should grant the City's motion to dismiss without leave to amend since amendment would be futile. Defendant, who is represented by counsel, has now had two opportunities to state cognizable takings and due process claims against the City, and failed to do so. The City put Defendant on notice that it was seeking dismissal without leave to amend in its Motion, yet Defendant's Opposition does not request leave to amend if the Court grants the City Motion. This is not a case where Defendants' Cross-Complaint simply lacks sufficient allegations. It is one where the fundamental underpinning of Defendants' theories of liability against the City are not legally cognizable for the reasons described above.

The Ninth Circuit has upheld dismissals with prejudice based on moving party's conduct and the futility of amendment even as to the initial complaint. *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1155 (9th Cir. 2016) (affirming dismissal without leave to amend where amendment was futile and plaintiff delayed in presenting specific factual allegations); *In re Garabed Melkonian Tr.*, 235 Fed. App'x 404, 406 (9th Cir. 2007) (affirming dismissal without leave to amend where "all of [a]ppellant's proposed amendments would be futile"); *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) (affirming dismissal without leave to amend where it was not factually possible for plaintiff to satisfy the standing requirements). Here, Defendant already had the opportunity to amend, yet she has not used that opportunity to correct the errors the City and the Court identified in her original claims. The City would be prejudiced by having to re-brief the same issues for a third time.

Dismissal without leave to amend would also streamline these proceedings and preserve the Court's resources. The City's claims lie in state law. Dismissing Defendant's unripe federal claims without leave to amend would properly allow this case to be remanded where a state court judge can decide the remaining issues that involve questions of state law and relieve this Court of any further obligation to hear, manage, and resolve the matter. Therefore, the City respectfully requests that the Court order dismissal without leave to amend. *Doe v. Fed. Dist. Ct.*, 467 Fed. App'x 725, 728 (9th Cir.

2012) ("In light of Doe's conduct in this action, the district court had good reason to believe that further amendments would be futile and prejudice the defendants. It was therefore not an abuse of discretion to dismiss this case with prejudice.").

## CONCLUSION

The City respectfully requests the Court grant its motion to dismiss the FAC without leave to amend.

Date: September 30, 2025

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
WADE CHOW
Chief Attorney
Neighborhood and Resident Safety Division
HUNTER SIMS
Deputy City Attorneys

By: /s/ Hunter W. Sims III
HUNTER W. SIMS III
Attorneys for Plaintiffs
CITY AND COUNTY OF SAN FRANCISCO and
PEOPLE OF THE STATE OF CALIFORNIA

# CERTIFICATE OF SERVICE

I, CHRISTINE HOANG, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States District Court for the Northern District of California by using the appellate CM/ECF system on September 30, 2025.

**PLAINTIFFS AND CROSS-DEFENDANTS' REPLY IN SUPPORT OF MOTION AND MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed September 30, 2025, at San Francisco, California.

                                                */s/  CHRISTINE HOANG*
                                                CHRISTINE HOANG