1
2
3
4
5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7
8

CITY AND COUNTY OF SAN
FRANCISCO,

Case No.  25-cv-03518-SK

9

Plaintiff and Cross-Defendant,

10

v.

**ORDER GRANTING MOTION TO
DISMISS FIRST AMENDED CROSS-
COMPLAINT**

11
12

KELLY ANN DOMINGUEZ,

Regarding Docket No. 19

Defendant and Cross-Complainant.

13
14

This matter comes before the Court upon consideration of the second motion to dismiss, by

15

Plaintiff and Cross-Defendant City and County of San Francisco's ("City"), the claims raised in

16

the Amended Cross-Complaint filed by Defendant and Cross-Complainant Kelly Ann Dominguez

17

(now known as "Johnston").  (Dkt. No. 19.)  This Court has subject matter jurisdiction pursuant to

18

28 U.S.C. § 1331, and all parties consented to the jurisdiction of the Undersigned magistrate

19

judge.  (Dkt. Nos. 4, 5.)  Having carefully considered the parties' papers, relevant legal authority,

20

case record, and having had the benefit of oral argument, the Court HEREBY GRANTS the City's

21

second motion to dismiss for failure to state a regulatory takings and substantive due process

22

claim.  Accordingly, the Court dismisses WITH PREJUDICE for the reasons set forth below.

23

**BACKGROUND**

24

Johnston alleges the following facts, which the Court accepts as true for purposes of this

25

motion.  In October 2015, Johnston purchased a Below Market Rate condominium unit (the

26

"BMR Unit") as part of the City's Below Market Rate housing program (the "BMR Program").

27

(Dkt. No. 18, pp. 2–3.)  As part of the BMR Program, the City regulated the BMR Unit's rental.

28

(Dkt. No. 19-1, pp. 135–36.)

1    In 2022, the City investigated potential misuse of the BMR Unit and determined that

2    Johnston had rented out the BMR Unit in violation of the Program's contracted terms.  (Dkt. No.

3    18, ¶ 11.)  Johnston takes issue with the investigation and determination, stating that she "never

4    received rental income" from the BMR Unit, and she is "informed and believes that her soon-to-

5    be-former husband allowed someone to live in the unit, and that, unbeknownst to Johns[t]on, the

6    person paid rent to her husband."  (*Id.* at ¶ 12.)

7    On May 16, 2024, the City filed a Complaint in the Superior Court of California.  (Dkt.

8    No. 19-1, p. 14.)  The City alleged that Johnston violated the Program's conditions by failing to

9    use the BMR Unit as a primary residence and illegally renting out the BMR Unit since at least

10   2018.  (*Id.* at pp. 8–9.)  The City asserted two claims: (1) violation of the San Francisco Planning

11   Code, and (2) an Unlawful, Unfair, and Fraudulent Business Practice under the Unfair

12   Competition Law, as codified in California Business and Professions Code sections 17200-17210.

13   (*Id.* at p. 5.)  On March 21, 2025, Johnston filed a Cross-Complaint asserting four claims: (1)

14   inverse condemnation/regulatory takings, (2) procedural due process violation, (3) substantive due

15   process violation, and (4) equal protection violation.  (*Id.* at pp. 132-39.)

16   The City removed the case to this Court on April 22, 2025.  (Dkt. No. 1.)  On May 1, 2025,

17   the City filed a motion to dismiss Johnston's Cross-Complaint pursuant to Federal Rule of Civil

18   Procedure 12(b)(6).  (Dkt. No. 6.)  On July 22, 2025, the Court granted the City's motion to

19   dismiss, providing Johnston leave to amend her claims based on her alleged Enforcement Injury

20   only.  (Dkt. No. 17, p. 9.)

21   On August 22, 2025, Plaintiff filed an Amended Cross-Complaint (hereinafter "FACC"),

22   asserting two claims pursuant to 42 U.S.C. § 1983: (1) regulatory takings[1], and (2) a substantive

23   due process violation. (Dkt. No. 18, pp. 4–6.)  On September 8, 2025, the City filed a motion to

24   dismiss Johnston's FACC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 19.)

25   On September 23, 2025, Johnston filed an opposition to the City's motion to dismiss.  (Dkt. No.

26

27         [1] Johnston also asserts regulatory takings claim directly pursuant to the Fifth Amendment

28   to the U.S. Constitution, but "[t]aking[s] claims must be brought under § 1983."  *Hacienda Valley Mobile Ests. v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003) (internal citation omitted).

United States District Court
Northern District of California

24.)  On September 30, 2025, the City filed a reply in support of its motion to dismiss.  (Dkt. No. 25.)  The Court heard oral argument on November 10, 2025.  (Dkt. No. 27.)

## ANALYSIS

**A.    Motion to Dismiss Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  On a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted, cleaned up).  Rather, a plaintiff must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *id.* at 556–57).

**B.    The City's Motion to Dismiss.**

The Court previously dismissed, with prejudice, Johnston's claims premised on her alleged "Alienability Injury," defined as the City's implementation of restrictions that prevented the BMR Unit from selling (hereinafter "Alienability Injury claims").  (Dkt. No. 17, pp. 4, 8.)  In addition, the Court dismissed Johnston's claims premised on her alleged "Enforcement Injury," characterized as the City's "erroneously concluding that [she] violated Program terms and threatening her with high fines and penalties" (hereinafter "Enforcement Injury claims") without prejudice.  (*Id.* at p. 4.)    The Court granted Johnston leave to amend to add additional factual allegations to support her Enforcement Injury claims.  (*Id.* at p. 9.)

In her FACC, Johnston alleges two theories of how the City's enforcement of the rental regulations of the BMR Program injured her: (1) the nature and extent of the City's investigation and its coercive regulatory enforcement tactics have amounted to a taking of Johnston's property,

United States District Court
Northern District of California

and (2) the City's imposition of regulations deprived Johnston of her substantive due process rights as a property owner.  (Dkt. No. 18, pp. 2, 6.)

In its second motion to dismiss and reply in support of its motion, the City contends that (1) Johnston's Enforcement Injury claims are not ripe, (2) Johnston's Enforcement Injury claims are time-barred, (3) Johnston has failed to allege facts sufficient to state a takings and substantive due process claim, (4) Johnston's Enforcement Injury claims are based on claims the Court previously dismissed, and (5) Johnston does not advance any theory of liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  (Dkt. Nos. 19, 25.)[2]  Because the Court agrees with the City that Johnston fails to state claims for regulatory takings and violation of her substantive due process rights, the Court need not address Johnston's alleged theory of liability under *Monell*. However, as threshold matters, the Court first addresses the City's arguments regarding ripeness and timeliness.

### 1.    Johnston's Enforcement Injury Claims Are Ripe.

Claims for as-applied takings and substantive due process violations are not ripe until a plaintiff receives a final decision regarding the application of the regulations to the property at issue.  *Ballard v. City of W. Hollywood*, No. 24-538, 2025 WL 618110, at *1 (9th Cir. Feb. 26, 2025), *cert. denied sub nom. Ballard v. W. Hollywood*, CA, No. 25-68, 2025 WL 2824118 (U.S. Oct. 6, 2025) (citing *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott, Pa.*, 580 U.S.

---

[2] The City, in conjunction with its motion to dismiss, requests judicial notice of the following documents filed in state court: (1) the City's complaint and its accompanying exhibits, and (2) Johnston's cross-complaint.  (Dkt. Nos. 19, 19-1.)  The exhibits to the City's complaint include recorded grant deeds, property records, and documents from the City and County of San Francisco Inclusionary Affordable Housing Program.  (Dkt. No. 19-1.)  Johnston did not oppose the motion for judicial notice.  The Court GRANTS the City's requests for judicial notice.  *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992) (explaining that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); *Ortiz-Luis v. Fed. Home Loan Mortg. Corp.*, No. 21-CV-989-CAB-AHG, 2021 WL 3533059, at *2 (S.D. Cal. Aug. 11, 2021) ("Public property records may be judicially noticed.") (citing *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004)); *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) ("Courts may take judicial notice of some public records, including the records and reports of administrative bodies.") (internal citation and quotation marks omitted).

United States District Court
Northern District of California

1   180, 139 (2019) (takings); *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1456 (9th Cir. 1987), *as*

2   *amended by*, 830 F.2d 968 (9th Cir. 1987) (substantive due process)).  Indeed, "[w]hen a plaintiff

3   alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not

4   consider the claim before the government has reached a 'final' decision."  *Pakdel v. City & Cnty.*

5   *of San Francisco*, 594 U.S. 474, 475 (2021) (per curiam).  To satisfy the finality requirement, "all

6   a plaintiff must show is that 'there [is] no question ... about how the 'regulations at issue apply to

7   the particular land in question.'"  *Id.* at 478 (quoting *Suitum v. Tahoe Regional Planning Agency*,

8   520 U.S. 725, 739 (1997)).  In other words, only "de facto finality is necessary": "once the

9   government is committed to a position ... the dispute is ripe for judicial resolution."  *Pakdel*, 594

10  U.S. at 479.

  Here, Johnston's Enforcement Injury claims are ripe to the extent they are based on the
City's lawsuit against Johnston.  At oral argument, Johnston indicated that the "final decision" she
received regarding the application of the BMR rental regulations to her property was the filing of
the City's lawsuit against Johnston in 2024.   The City, in its reply in support of its motion to
dismiss, argued that Johnston's Enforcement Injury claims are not ripe because the "lawsuit is
pending" and Johnston "remains free to defend herself [against] the allegations at issue or bring a
claim for declaratory relief."  (Dkt. No. 25, p. 6.)  The Court disagrees.

  First, there is a clear and concrete injury stemming from the City's imposition of penalties
through its lawsuit against Johnston.  Taking Johnston's factual allegations as true and drawing all
reasonable inferences in her favor, the imposition of significant penalties—totaling between
$610,000 and $792,000—has already caused her financial uncertainty even if the City has not
collected the fines.  (Dkt. Nos. 18, p. 2; 19-1, p. 13; 24, p. 8.)  This alleged injury sufficiently
establishes that Johnston's Enforcement Injury claims are ripe.  *See Thomas v. Cnty. of Humboldt,*
*California*, 124 F.4th 1179, 1188 (9th Cir. 2024)*, cert. denied sub nom. Thomas v. Humboldt*
*Cnty., California*, No. 24-1180, 2025 WL 2906470 (U.S. Oct. 14, 2025) (citing *Clapper v.*
*Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (recognizing standing where there is "a
substantial risk that the harm will occur, which may prompt plaintiffs to reasonably incur costs to
mitigate or avoid that harm") (internal citation and quotation marks omitted)).

2. **Johnston's Enforcement Injury Claims Are Timely.**

As relevant here, the Ninth Circuit routinely subjects both as-applied and facial challenges brought under 42 U.S.C. § 1983 to the forum state's statute of limitations for personal injury suits, which in California is two years. *Flynt v. Shimazu*, 940 F.3d 457, 461 (9th Cir. 2019); Cal. Code Civ. P. § 335.1. The accrual date for claims under § 1983 is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "It is the standard rule that accrual occurs … when the plaintiff knows or has reason to know of the actual injury." *Flynt*, 940 F.3d at 462 (internal citation and quotation marks omitted). Importantly, "[a] claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint." *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (cleaned up). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).

Here, the City argues that Johnston's Enforcement Injury claims are time-barred because Johnston "has been on notice since October 2015 that any violation of the terms of the contract, including illegally renting the BMR unit or not using the property as her primary residence, may result in the same penalties sought through this lawsuit." (Dkt. No. 25, p. 4.) The City further asserts that Johnston was "aware the City would enforce the contract itself in August 2021 following her failed attempt at selling the property." (*Id.*) In response, Johnston argues that her Enforcement Injury claims are timely because the City's enforcement action—its lawsuit against Johnston—was not filed until May 16, 2024 and therefore, her Cross-Complaint was "well within the two-year limitations period." (Dkt. No. 24, p. 8.) To support her position, Johnston argues that the "scope and extent of [her] claim was unknown until such time as the City sued her." (*Id.*)

Johnston's Enforcement Injury claims are timely to the extent they are based on the City filing suit against her in state court.[3] Johnston filed her Cross-Complaint on March 21, 2025. (Dkt. No. 19-1, p. 139). Johnston's Enforcement Injury claims would have been time-barred if

---

[3] Because the Court finds Johnston's Enforcement Injury claims timely, the Court need not address Johnston's arguments that alternative limitation periods govern her takings claim.

United States District Court
Northern District of California

they accrued before March 21, 2023.  However, the City filed its lawsuit on May 16, 2024.  (Dkt.

No. 24, p. 8.)  Therefore, Johnston's Enforcement Injury claims are timely because the City, in

filing suit, notified Johnston of alleged regulation violations within the two-year limitations

period.  *See Thomas*, 124 F. 4th at 1192 (finding as-applied challenges timely when the plaintiffs

received notices of regulation violations within the limitations period).

### 3.    Johnston Fails to State Claims for Regulatory Takings.

Under the Takings Clause of the Fifth Amendment, the federal government — as well as

state and local governments, by operation of the Fourteenth Amendment — are prohibited from

taking private property for public use without paying just compensation.  *See* U.S. CONST.

Amend. V.  "The Supreme Court has recognized two broad categories of takings: physical takings

and regulatory takings."  *Pakdel v. City & Cnty. of San Francisco*, 636 F. Supp. 3d 1065, 1071

(N.D. Cal. 2022) (citing *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148–49 (2021)).  In

addition to the division into physical and regulatory takings, takings claims are divided into

"facial" and "as-applied" challenges.  *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th

Cir. 1993) *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019).  "A

facial challenge involves a claim that the mere enactment of a statute constitutes a taking, while an

as-applied challenge involves a claim that the particular impact of a government action on a

specific piece of property requires the payment of just compensation."  *Id.* (citing *Keystone

Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987)) (internal quotation marks

omitted).

As relevant here, a claim for regulatory takings encompass restrictions by government on

"a property owner's ability to use" her "own property."  *Cedar Point*, 594 U.S. at 149 (citing

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321–23 (2002)).  There

are three types of regulatory takings—*Loretto*, *Lucas*, and *Penn Central* takings.  *See Bridge Aina

Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020) (internal citations omitted).  A

*Loretto* taking occurs "where government requires an owner to suffer a permanent physical

invasion of her property."  *Id.* at 625 n.6 (citing *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538

(2005); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)).  "The *Lucas* rule

1    applies to regulations that completely deprive an owner of *all* economically beneficial us[e] of her

2    property." *Bridge Aina*, 950 F.3d at 626 (citing *Lingle*, 544 U.S. at 539; *Lucas v. South Carolina*

3    *Coastal Council*, 505 U.S. 1003, 1019 (1992)) (internal quotation marks omitted) (emphasis in

4    original).  Lastly, the *Penn Central* three-part balancing test prescribes that the court must

5    "balanc[e] factors such as the economic impact of the regulation, its interference with reasonable

6    investment-backed expectations, and the character of the government action." *Cedar Point*, 594

7    U.S. at 148 (citing *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124

8    (1978)).

9        Here, Johnston alleges that the City's enforcement of its BMR Program regulations on her

10    specific property amounted to a regulatory taking under the principles established in *Penn Central*

11    "and/or" *Lucas*.  (Dkt. No. 18, pp. 4–5.)  In response, the City argues that its enforcement of BMR

12    Program regulations does not amount to a regulatory taking because "the enforcement at issue in

13    this case arises solely out of" Johnston's "use of her property, not her interest in the property."

14    (Dkt. No. 25, p. 6.)  The City notes that Johnston, in bringing regulatory takings claims, "attempts

15    to circumvent the legal principle that a takings claim must result in the deprivation of property, by

16    arguing that the threat of fines resulting from her decision to not use the property as her primary

17    residence and, instead, rent out the property, amounts to a taking."  (*Id.*)

18        The Court concludes that Johnston fails to state claims for regulatory takings under *Lucas*

19    and *Penn Central*.  First, in her FACC, Johnston only devotes the following single sentence to

20    support her *Lucas* takings claim: "[the City] has made it impossible for Johnston to make any

21    economic or beneficial use of the [BMR Unit]."  (Dkt. No. 18, ¶ 16.)  This assertion does not

22    include sufficient facts to state a plausible claim of an impermissible taking under *Lucas*.  *See*

23    *Tahoe-Sierra*, 535 U.S. at 330 ("Anything less than a 'complete elimination of value,' or a 'total

24    loss,' ... would require the kind of analysis applied in *Penn Central*.") (internal citations omitted)).

25    There is no dispute that Johnston is allowed to reside in the BMR Unit, and thus the City has not

26    completely deprived her of all economically beneficial use of her property.  *See Bridge Aina*, 950

27    F.3d at 626.

28        Second, Johnston fails to plead a cognizable claim under *Penn Central* because Johnston's

United States District Court
Northern District of California

8

United States District Court
Northern District of California

alleged property interest—renting the BMR unit—is a property *use*, not a property interest.  To succeed on a claim under the Takings Clause, a plaintiff must show that she or he possessed a property interest that is constitutionally protected and that the government deprived her or him of that interest.  *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998).  While "money can be the subject of a taking," *Ballinger v. City of Oakland*, 24 F.4th 1287, 1295 (9th Cir. 2022), Johnston's alleged right to "generat[e] an economic return through the [BMR Unit's] rental" is not.  (Dkt. No. 18, p. 5, ¶ 18); *see Ballinger*, 24 F.4th at 1296 (collecting cases where money can be subject to a taking).  Indeed, when Johnston purchased the BMR unit, she agreed to the City's requirements that (1) she reside in the BMR Unit as her primary residence and (2) she was not allowed to rent the BMR Unit.  (Dkt. No. 19-1, pp. 32, 34, 70, 71.)  Therefore, Johnston does not have a property interest that could be subject to a taking because the undisputed facts show that she did not have a right to rent the property.  *See Ballinger*, 24 F.4th at 1296.  In addition, because this Court dismissed her Alienability Injury claims regarding her right to sell the BMR Unit, the City's prohibition on sale cannot constitute a claim under *Penn Central.*

Furthermore, the "primary factor" in the *Penn Central* regulatory takings analysis— "the extent to which the regulation has interfered with distinct investment-backed expectations," is fatal to Johnston's claim.  *See Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010) (internal citation omitted).  Johnston alleges that she was "foreclosed from generating an economic return through the rental of the [BMR Unit.]"  (Dkt. No. 18, p. 5, ¶ 18.)  However, Johnston could have no "distinct investment-backed expectations" to obtain illegal amounts of rent.  As previously noted, there is no dispute that the rules of the BMR Program prohibited her from renting the BMR Unit.  (Dkt. No. 19-1, pp. 32, 34, 70, 71.)  For these reasons, Johnston fails to state a claim for regulatory takings under any theory.

### 4.     Johnston Fails to State a Claim for Violation of Substantive Due Process Rights.

A substantive due process claim "must, as a threshold matter, show a government deprivation of life, liberty, or property."  *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998).  The Ninth Circuit "specifically reaffirmed the principle that landowners have a

9

1    constitutionally protected property interest in their right to devote [their] land to any *legitimate*

2    use." *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th

3    Cir. 2007) (internal citations and quotation marks omitted) (emphasis added).

4        Here, Johnston alleges that she has a "constitutionally protected property interest in

5    making legitimate use of the [BMR Unit], to choose whether to occupy the Property or not, to

6    transfer the property, and to otherwise exercise all traditional rights of ownership of her real

7    property." (Dkt. No. 18, p. 6, ¶ 22.)  In response, the City argues that the facts supporting

8    Johnston's Enforcement Injury claims do not amount to a violation of her substantive due process

9    rights.  (Dkt. Nos. 19, pp. 13–14; 25, p. 8.)

10        Here, Johnston fails to show a "legitimate" property use.  *See Action Apartment Ass'n*, 509

11   F.3d at 1026.  First, Johnston did not have a choice "to occupy the Property or not." (*See* Dkt. No.

12   18, p. 6, ¶ 22.)  Rather, as noted above, when Johnston purchased the BMR unit, she agreed to the

13   City's requirement that the BMR Unit be owner-occupied and used as the owner's primary

14   residence.  (Dkt. No. 19-1, p. 70.)  Second, regarding Johnston's alleged property interest "to

15   transfer the property," (Dkt. No. 18, p. 6, ¶ 22), this Court dismissed Johnston's Alienability

16   Injury claims regarding her right to sell the BMR Unit with prejudice.  (Dkt. No. 17, p. 8.)  Lastly,

17   the BMR Program Rules prohibit Johnston's sole remaining alleged property interest—the right to

18   rent the BMR Unit.  (Dkt. No. 19-1, pp. 32, 34, 71.)  Therefore, because Johnston's proffered

19   property use—renting the BMR unit—is not legitimate, there can be no violation of her

20   substantive due process rights for depriving her of that right.  *See Action Apartment Ass'n*, 509

21   F.3d at 1026.  For these reasons, Johnston fails to state a substantive due process claim.

22                                    **CONCLUSION**

23        For the foregoing reasons, the Court GRANTS the City's second motion to dismiss the

24   amended cross-complaint for failure to state a claim.  Further, because Johnston has not cured

25   pleading deficiencies, despite the Court's prior order granting leave to amend, Johnston's

26   Amended Cross-Complaint is DISMISSED WITH PREJUDICE.  *See Zucco Partners, LLC v.*

27   *Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (holding that

28   failure to correct pleading deficiencies after dismissal is a "strong indication" that further

United States District Court
Northern District of California

<div style="text-align: left; writing-mode: vertical-rl;">United States District Court<br>Northern District of California</div>

1    amendment would be futile); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir.

2    2013) ("A district court's discretion to deny leave to amend is 'particularly broad' where the

3    plaintiff has previously amended.") (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 90

4    F.3d 351, 355 (9th Cir. 1996)).

5         Because this Court DISMISSES Plaintiff's federal Enforcement Injury claims WITH

6    PREJUDICE and this Court lacks subject matter jurisdiction over the claims in the City's

7    complaint, all of which are based on state law, IT IS HEREBY ORDERED that this case shall be

8    remanded to the Superior Court of California for the County of San Francisco.  The clerk is

9    instructed to transfer the file.  *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir.

10   2016); *Walker v. Kroger Co.*, No. 22-CV-00261-JST, 2022 WL 20208929, at *2 (N.D. Cal. June

11   21, 2022).

12        **IT IS SO ORDERED**.

13   Dated: November 25, 2025



     _____

     SALLIE KIM
     United States Magistrate Judge